[No. H018134. Sixth Dist. June 15, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO TRUJILLO GARCIA, Defendant and Appellant.

## COUNSEL

Lori Quick, umder appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Amy Haddix, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WUNDERLICH, J.**—Defendant Antonio Trujillo Garcia appeals from the judgment entered after a jury convicted him of spousal rape. He raises several claims of trial court error, primarily centered around the requirement of corroboration mandated by Penal Code section 262, subdivision (b).[1] He contends: (1) the trial court erred in denying the motion to dismiss the charge of spousal rape for lack of corroboration; (2) insufficient evidence supported the conviction due to insufficient corroboration; (3) the trial court erred in failing to instruct the jury to determine whether the prosecution was commenced within the appropriate time period; (4) the trial court erred in admitting evidence of a November 1996 battery on the victim; and (5) the trial court erred in denying defendant's motion for new trial based on jury misconduct. We find no errors and conclude the trial court properly used evidence of defendant's other acts of domestic violence to corroborate the victim's allegation of spousal rape as required by section 262, subdivision (b).

### STATEMENT OF PROCEDURE

Defendant was charged on September 8, 1997, with one count of rape (§ 261, subd. (a)(2)), one count of rape in concert (§ 264.1), and one count of spousal rape (§ 262, subd. (a)(1)). The information further alleged that each offense was a serious felony within the meaning of section 1192.7.

---

[1]Further statutory references are to the Penal Code unless otherwise specified.

Jury trial began on November 19, 1997. The trial court struck the allegation of rape in count 1 and the jury convicted defendant of spousal rape. A mistrial was declared on the rape in concert charge after the jury reported that it was unable to reach a verdict on that count.

On February 11, 1998, the trial court denied defendant's motion for new trial and sentenced him to serve eight years in prison. The rape in concert charge was dismissed in the interests of justice.

## STATEMENT OF FACTS

Viewed in accord with the usual rules on appeal (*People v. Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388]), the record reflects the following facts: In August of 1995, E.G. separated from her husband of 14 years, defendant here, and he was served with a domestic violence temporary restraining order (TRO) requiring him to stay 50 yards away from her and to call 24 hours in advance to arrange visitation with their two children. The same day he was served with the restraining order, he violated it twice by coming to E.G.'s house. She called the police, who located defendant and warned him not to violate the restraining order. Defendant said that he understood and would comply with the order. However, he later threatened E.G. that if she refused to take him back, she would "pay for this."

Defendant frequently violated the restraining order by coming to E.G.'s house. Neighbors saw him stand outside, whistle at her, rattle the fence and knock on the windows. She did not respond or allow him into the house. At least three other specific incidents happened which she reported each time to the police. On August 20, 1995, defendant went to E.G.'s church and tried to speak to her. She refused and he grabbed her hand. An 11-year-old girl witnessed the incident and told defendant to leave E.G. alone. When defendant began yelling at the girl, she ran in and called the police. They came and arrested defendant, who had an odor of alcohol on his breath. On October 1, 1995, E.G. was walking home from work along her usual route, which passed through a field with a wooded area on the other side. Defendant appeared and chased her, but she got away. She reported this incident to the police one week later. Then on October 7, 1995, defendant came to E.G.'s house and banged on the window trying to get in. He warned her that she would be sorry if she did not take him back. She called the police, who found defendant hiding in a crawl space with their son. Defendant appeared intoxicated and challenged the officer to a fight. Defendant was arrested.

Then on November 14, 1995, E.G. was walking home from work about 5:30 p.m., as it was beginning to get dark. As she passed the field, she was

struck from behind in the shoulder. Someone placed a hand over her mouth and then gagged her with a handkerchief. Her hands were bound behind her back and she was knocked to the ground. E.G. then saw defendant and another man, whom she did not recognize, standing over her. The two men pulled her pants down and pulled her blouse up. Defendant then fondled her breasts and raped her. He turned to the other man and said, "Now fucker this is your turn. . . . I don't like this woman." The other man then raped her. The men laughed and threatened to have a gang of "[C]holos" rape her if she reported the assault to the police. The men fled; she freed herself and walked home.

E.G. was scared and embarrassed. She was not injured, but her clothes were dirty. She showered, fed her children dinner and then went to her evening class at a nearby elementary school. Defendant then showed up outside her class and whistled outside a window. A janitor saw she was upset and waited with her while she called the police from a telephone. E.G. was visibly upset while talking to the police officers who arrived. She told them about the restraining order and asked them to arrest defendant, but she did not report the rape that had occurred earlier that evening. At trial, she testified that she was too embarrassed and scared to tell anyone about the rape. The officers could not find defendant.

In December of 1995, E.G. filed for divorce. Defendant continued to harass her and was arrested on two more restraining order violations in September 1996. On November 5, 1996, defendant was arrested for punching E.G. in the face when he saw her walking with another man, J.O. When E.G. went to the police station to report the assault, her face was red and swollen and she was crying.

E.G. married J.O. in January 1997. After that, she confided in him that she had been raped by defendant and another man. J.O. insisted that she report the rape to the police. She did so approximately one week later, on February 9, 1997, some 15 months after the rape occurred.

In her report to the police, E.G. used an interpreter. Some of the details in her report differed from her later testimony at trial. To the police, she failed to mention that she was struck from behind. She stated that the stranger pulled down her pants and defendant pulled down her underwear. She also told the officers the men slapped her in the face and ripped her blouse open. She did not report fondling of her breasts.

Police officers interviewed defendant the day after E.G.'s report. He initially denied having any sexual contact with E.G. following their separation. He then changed his story, saying that they had one act of consensual

intercourse during August or September of 1995. Defendant said that he came across her walking home from work. They talked, engaged in consensual foreplay and then had sex in the nearby field. He repeatedly denied raping E.G.

At trial, defendant testified. He admitted that he did not want the separation and that he had violated the restraining order several times. He also admitted pleading guilty to three counts of violating the restraining order and one count of assault against her. Defendant denied raping E.G. or threatening her in any way. He said they had engaged in one act of consensual sex soon after they had separated, but he described the incident as a meeting at a specified location. He also explained other violations of the restraining order as inadvertent, as when he saw E.G. on November 14, 1995, at the school because he was watching his son play soccer. He insisted the girl who testified to the incident at the church was lying, as was E.G. He also denied striking her in the face even though he had admitted pleading guilty to the assault.

## DISCUSSION

### I

### *Section 262*

Section 262, subdivision (b) (hereafter section 262(b)) provides that the six-year statute of limitations set forth in section 800 shall apply to the charge of spousal rape. The section further provides that: "no prosecution shall be commenced under this section unless the violation was reported to medical personnel, a member of the clergy, an attorney, a shelter representative, a counselor, a judicial officer, a rape crisis agency, a prosecuting agency, a law enforcement officer, or a firefighter within one year after the date of the violation. This reporting requirement shall not apply if the victim's allegation of the offense is corroborated by independent evidence that would otherwise be admissible during trial."

■■■ Defendant raises several challenges to the validity of his prosecution for spousal rape under this subdivision, but the essence of the various claims is that the victim's allegation of the offense was not corroborated by independent evidence, and therefore no prosecution should have ensued due to her late reporting of the incident. Specifically, defendant asserts that his motion to dismiss for insufficient corroborating evidence should have been granted, that the jury should have been instructed to determine whether sufficient corroborating evidence brought the prosecution within the statute

of limitations and that the evidence of his violations of the TRO should not have been admitted because it was irrelevant and prejudicial.

*Factual Background*

During pretrial motions in limine, defendant moved to dismiss the charges of rape and spousal rape under section 262(b) on the grounds that the victim failed to report the offense within one year of its occurrence.[2] The prosecutor stipulated that the victim had not reported the offense within one year, but asserted that the reporting requirement did not apply because the victim's allegation of the offense was corroborated by independent evidence that would otherwise be admissible during trial. The prosecutor specifically noted defendant's restraining order violations and his statement to police as sufficient corroborating evidence. The trial court took the matter under submission.

Defendant also moved pursuant to Evidence Code section 1101 to exclude evidence of his uncharged assault on the victim and his violations of the restraining order. The trial court denied the motion, stating: "The fact that she got a restraining order, I think, is highly relevant. And the fact that there were a number of violations on the restraining order, the fact that she and other people reported violations of the restraining order and that she was trying to do what she could to have the restraining order in effect and to not have contact with her and to preclude him from having contact with her, I think it's highly irrelevant [*sic*]. And the jury has to see the total picture, and that may well be the reasonable and logical explanation is the reason why the reporting went on so long shows a lack of consent, and also shows a possible motive on his part of the—so I think the total picture of what was going on between them from the time the restraining order was granted is relevant. [¶] You may limit some of the details. But the fact what was in here on each one, when she reported it, the people reported it, there was violence. He was around, violated the restraining order. The fact that she reported and had him arrested, I find that to be relevant."

During the trial, defendant moved under Evidence Code section 352 to exclude evidence that defendant assaulted the victim on November 5, 1996. The trial court denied the motion, ruling the evidence was admissible and relevant on the issue of consent and delay in reporting.

After the close of evidence in the trial, defendant renewed his motion to dismiss the spousal rape charge for lack of corroborating evidence. The trial court found adequate corroboration and denied the motion.

---

[2]There was no request for an evidentiary hearing, nor were any affidavits submitted.

Defendant also requested a special jury instruction on the necessity of corroborating evidence. The trial court denied this request as well as the prosecutor's request for an instruction based on former CALJIC No. 10.60 (Sexual Crimes—Corroboration Not Necessary).

Finally, after the verdict, defendant moved for a new trial under section 1181 on the grounds that the charge of spousal rape was not corroborated by independent evidence. The court denied the motion, again finding there was sufficient corroborating evidence.

*Motion to Dismiss*

Defendant first claims the trial court erred in denying his motion to dismiss the charge of spousal rape based on the lack of corroborating evidence. He insists the evidence put forth by the prosecutor did not meet appropriate standards for corroborating evidence. Both parties acknowledge that no case law discusses this issue.

Defendant points to the legal definitions and principles concerning corroboration of evidence in the context of an accomplice. Section 1111 provides in pertinent part: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In *People v. Williams* (1997) 16 Cal.4th 635, 680-681 [66 Cal.Rptr.2d 573, 941 P.2d 752], the Supreme Court reiterated the principles surrounding such corroboration: " ' "The evidence required for corroboration of an accomplice 'need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged.' [Citations.] Moreover, evidence of corroboration is sufficient if it connects defendant with the crime, although such evidence 'is slight and entitled, when standing by itself, to but little consideration.' [Citations.]" ' " Thus, only slight evidence is required for corroboration. We also note that the Supreme Court has stated: " '[U]nless a reviewing court determines that the corroborating evidence should not have been admitted or that it could not reasonably *tend* to connect

a defendant with the commission of a crime, the finding of the trier of fact on the issue of corroboration may not be disturbed on appeal.' [Citation.]" (*People v. Szeto* (1981) 29 Cal.3d 20, 27 [171 Cal.Rptr. 652, 623 P.2d 213], original italics.)

Defendant then cites a series of cases wherein the noted corroboration for a conviction of the crime of rape was physical evidence, witness statements, or the defendant's statements made near the time of the crime. (See *People v. Navarro* (1981) 126 Cal.App.3d 785 [179 Cal.Rptr. 118]; *People v. Adams* (1986) 186 Cal.App.3d 75 [230 Cal.Rptr. 588], disapproved by *People v. Gammage* (1992) 2 Cal.4th 693, 702 [7 Cal.Rptr.2d 541, 828 P.2d 682]; *People v. Hollis* (1991) 235 Cal.App.3d 1521 [1 Cal.Rptr.2d 524]; *People v. Pena* (1992) 7 Cal.App.4th 1294 [9 Cal.Rptr.2d 550].) Defendant insists that such type of corroboration is necessary and was not present in this case. But these cases all differ from the present case in that they do not consider the evidentiary requirements of section 262(b) nor do they concern evidence of other acts of domestic violence. Defendant cites two other cases, *People v. Hendrix* (1992) 8 Cal.App.4th 1458 [10 Cal.Rptr.2d 922] and *People v. Hayes* (1992) 3 Cal.App.4th 1238 [5 Cal.Rptr.2d 105], in which the reviewing courts reversed convictions under a harmless error analysis where charges of rape and false imprisonment were not independently corroborated by physical evidence. In *Hayes*, the trial court erred in suppressing material evidence bearing on the credibility of the victim and there was little other corroborating evidence. In *Hendrix*, the trial court erred in failing to give a lesser included offense instruction on misdemeanor false imprisonment. The jurors had rejected the victim's story of assault with intent to commit rape, and other evidence did not fully corroborate her version of events. We do not find these cases helpful here.

The People maintain that the trial court properly denied the motion to dismiss because sufficient independent corroborating evidence was present to enable the prosecution to proceed. They note that the standard for corroborating evidence proposed by defendant and derived from his cited cases is too exacting a standard for the threshold question of commencing a prosecution and that the general definition used by defendant from accomplice principles is actually a slight or low standard. The People also point out that the cases defendant relies on concern the necessary corroboration to uphold a conviction of rape in specific situations, a different question from the corroboration required for a prosecution to proceed. We agree this is an important distinction. In addition, none of the cases defendant relies on concern an ongoing relationship of domestic violence where evidence of other acts of misconduct might also be viewed as a pattern of domestic violence.

The People further posit that a better analytic tool is found in section 803, subdivision (g)(2)(B), which outlines provisions for tolling the statute of limitations for certain enumerated offenses against underage victims. Section 803, subdivision (g) provides in relevant part: "(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5. [¶] (2) This subdivision applies only if both of the following occur: [¶] (A) The limitation period specified in Section 800 or 801 has expired. [¶] (B) The crime involved substantial sexual conduct, . . . and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals."

The People then explain that under this subdivision, independent corroborating evidence may be evidence of other acts of sexual misconduct. (See *People v. Yovanov* (1999) 69 Cal.App.4th 392 [81 Cal.Rptr.2d 586].) They reason that spousal rape is a form of domestic violence (see *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139 [83 Cal.Rptr.2d 320]), thus under both the standards for corroboration of section 803, subdivision (g)(2)(B) and under recently enacted Evidence Code section 1109 (evidence of defendant's other acts of domestic violence), evidence of the defendant's commission of other acts of domestic violence (here, his violations of the TRO) is admissible in a criminal action charging domestic violence in order to prove disposition to commit such acts. In other words, according to the People, uncharged acts of domestic violence may be used to corroborate the victim's allegations of the charged offense of spousal rape.

The People's analysis finds support in recent case law. In *People v. Yovanov, supra,* 69 Cal.App.4th 392, after reviewing the legislative history of section 803, subdivision (g), the court explained that "when a defendant is charged with a sexual offense, evidence of his or her uncharged sexual misconduct is no longer subject to the general prohibition against character evidence. (Evid. Code, § 1108.) 'With the enactment of [Evidence Code] section 1108, the Legislature "declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness." . . .' (*People v. Soto* [(1998)] 64 Cal.App.4th [966,] 983 [75 Cal.Rptr.2d 605], citation omitted.) [¶] Given the significant probative value of uncharged sexual misconduct in sex crimes cases, we find

evidence of such can be used to corroborate a victim's allegation of sexual abuse under section 803[, subdivision] (g). Of course, the precise probative value to be accorded this evidence will depend on various considerations, such as the frequency of the uncharged acts and their similarity and temporal proximity to the charged acts. (*People* v. *Soto, supra,* 64 Cal.App.4th at pp. 989-990.)" (*People v. Yovanov, supra,* 69 Cal.App.4th at pp. 404, fns. omitted.)

In *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182], the California Supreme Court upheld the constitutionality of Evidence Code section 1108 and explained the practicality of the Legislature's policy decision: "By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes. [Citation.]" (*People v. Falsetta, supra,* 21 Cal.4th at p. 915.)

Evidence Code section 1109 was enacted in 1996 and permits the introduction of evidence of the commission of prior acts of domestic violence in a criminal action charging the defendant with an offense involving domestic violence. (See *People v. Brown* (2000) 77 Cal.App.4th 1324, 1334 [92 Cal.Rptr.2d 433].) And in fact, there is now authority for the proposition that spousal rape is a higher level of domestic violence. (*People v. Poplar, supra,* 70 Cal.App.4th at p. 1139.)

In the present case, defendant's uncharged misconduct included multiple violations of a domestic violence restraining order and an admitted assault. In *People v. Poplar, supra,* 70 Cal.App.4th 1129, the reviewing court disagreed with the defendant's argument that past acts of domestic violence against other women were inadmissible under Evidence Code section 1109 because they did not involve sexual assault and he was charged with rape of his girlfriend. "Evidence Code section 1109 allows the introduction of evidence of defendant's commission of prior acts of domestic violence in a criminal action charging defendant with an offense involving domestic violence. [¶] Defendant argues that Evidence Code section 1109 and Penal Code section 13700 'refer to the classic kind of pushing, shoving, hitting, slapping, punching' and not to 'a specific sexual offense such as rape.' He claims that '[i]f the Legislature had desired to connect prior squabbles around the house with current rape charges it could have done so with considerably more specific language,' as it did with Evidence Code section 1108. Further, defendant claims that '[t]here is no logical disposition toward

committing rape based on a prior physical hassle or verbal contest between domestic partners.' Defendant also asserts that the prosecutor erroneously argued that the prior incidents were the same as the current charge in that all incidents involved defendant's propensity for violence against women. [¶] 'Domestic violence' is defined as 'abuse' committed against a cohabitant. (§ 13700, subd. (b).) 'Abuse' is defined as 'intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another.' (§ 13700, subd. (a).) [¶] Defendant was charged with forcible rape, which is defined as 'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, . . . [¶] . . . [¶] (2) [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of another.' (§ 261, subd. (a)(2).) [¶] The definition of domestic violence/abuse ('reasonable apprehension of imminent serious bodily injury to . . . herself') encompasses the definition of rape ('fear of immediate and unlawful bodily injury on the person'). Defendant was charged with an offense involving domestic violence, that is, rape. As the prosecutor argued, rape is a higher level of domestic violence, a similar act of control." (70 Cal.App.4th at pp. 1138-1139.)

 Defendant here concedes that his prior acts indicate he is "capable of being obnoxious, offensive, perhaps even violent and brutish," but he insists his acts do not reflect a tendency toward sexually assaultive behavior. However, we are persuaded that the analysis of the court in *Poplar* correctly links other acts of domestic violence with sexual assault or rape as an act of domestic violence.

The restraining order against defendant was for prior acts of domestic violence. The victim testified he frequently threatened her and she feared him. The evidence showed that after they separated, defendant pounded on her door, rattled her windows, grabbed her arm, chased her in a deserted area on her way home from work,[3] and repeatedly threatened harm to her, but he was always prevented from physical contact with the victim by other people or the police or intervening circumstances.[4] These repeatedly hostile interactions and show of physical force demonstrate a pattern of domination and violence which provoked fear and intimidation. We have little difficulty concluding that defendant's violation of a domestic violence restraining order, even if done by less physically violent acts, could be relevant to a

---

[3]Although the record is not explicit, it appears that this field he chased her through is the same field in which he later raped her.

[4]Of course, as discussed later, he also physically assaulted her in public even though she was accompanied by another man.

charge of spousal rape and thus could be used under section 262(b) to corroborate the victim's allegations for purposes of proceeding with prosecution.

In addition, defendant's statement to the police is evidence corroborating the victim's allegation. When defendant was questioned, he first denied, then admitted an act of sexual intercourse occurred, but he insisted it was consensual. He described the incident as taking place in the fall after they had separated and in the same field in which she described the rape occurring. Defendant's statement corroborated the fact that the act of sexual intercourse occurred. Although he denied the criminal intent implicit in the victim's version, he corroborated the sexual intercourse part of her allegation. Defendant's statement to the police officer was evidence admissible at trial and thus met the requirements of section 262(b). (See *People v. Williams, supra,* 16 Cal.4th at p. 680 [the necessary corroborative evidence for accomplice testimony can be a defendant's own admissions]; see also *People v. Neely* (1958) 163 Cal.App.2d 289, 301 [329 P.2d 357] [false and contradictory statements of defendant in relation to charge are corroborative evidence].)

We conclude the trial court properly used evidence of defendant's other acts of domestic violence to corroborate the victim's allegations as required by section 262(b). We find no error in the trial court's denial of defendant's motion to dismiss the charge.

*Evidence of 1996 Violation of Restraining Order and Battery*

Next, defendant claims the trial court erred in admitting evidence of defendant's November 1996 violation of the restraining order and battery on the victim. Defendant maintains that this incident one year after the alleged rape was both irrelevant and prejudicial in violation of Evidence Code section 352. We disagree.

Where a defendant challenges on appeal the admissibility of evidence, the appropriate standard of review is abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 264 [14 Cal.Rptr.2d 377, 841 P.2d 897].) The trial court here concluded that the evidence was admissible on the issues of defendant's intent, the lack of consent by the victim and to explain the delayed reporting.[5]

Under Evidence Code section 1101, subdivision (b), evidence that the defendant committed a crime, civil wrong, or other act is admissible "when

---

[5]We have found no explanation in the record as to why the prosecution did not use or argue Evidence Code section 1109. Apparently the procedural posture of the defendant's motion to dismiss based on lack of corroborating evidence did not trigger a companion request for admission from the prosecutor, but it might have been an appropriate ground for admission of

relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." Nothing in Evidence Code section 210, defining "relevant" evidence limits such evidence to a time frame before the crime at issue.

Defendant is correct that most cases deal with questions of admissibility of evidence of prior crimes or misconduct, but evidence of crimes or misconduct committed after the charged incident may also have relevance. (See *People v. Balcom* (1994) 7 Cal.4th 414, 425-426 [27 Cal.Rptr.2d 666, 867 P.2d 777].) The Supreme Court in *Balcom* quoted from Jefferson: " 'If evidence of an uncharged offense is relevant, there is no distinction between an offense that is *prior* to and one that is *subsequent* to the date of the charged offense.' (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 33.6, p. 1200, italics in original.)" (*People v. Balcom, supra,* 7 Cal.4th at p. 425.) Some of the same principles of relevance apply: " ' "Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a 'distinctive modus operandi' analysis of other factors" ' [Citations.]" (*People v. McCray* (1997) 58 Cal.App.4th 159, 172 [67 Cal.Rptr.2d 872].) Also, the least degree of similarity between the uncharged act and the charged offense is required in order to prove intent. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 [27 Cal.Rptr.2d 646, 867 P.2d 757].)

We agree with the court in *People v. Zack*: "Appellant was not entitled to have the jury determine his guilt or innocence on a false presentation that his and the victim's relationship . . . [was] peaceful and friendly." (*People v. Zack* (1986) 184 Cal.App.3d 409, 415 [229 Cal.Rptr. 317].) As discussed above, Evidence Code sections 1108 and 1109 are legislative decisions that evidence of other acts of sexual abuse or domestic violence are highly relevant. (See *People v. Falsetta, supra,* 21 Cal.4th at p. 915; *People v. Johnson* (2000) 77 Cal.App.4th 410, 419 [91 Cal.Rptr.2d 596].)

We further disagree with defendant that this evidence was unduly prejudicial under Evidence Code section 352. As we concluded above, the evidence of the various violations of the restraining order and the assault on the victim were highly probative on issues of motive, consent, fear and delay

the evidence of defendant's uncharged assault of the victim and his violations of the restraining order when defendant moved for exclusion under Evidence Code section 1101.

in reporting. The evidence reflects an ongoing picture of the relationship so that the jury can more effectively weigh the two parties' testimony. As noted above, the pattern of abuse is an important factor in a relationship marked by domestic violence.

*Jury Instruction*

Defendant requested a special jury instruction, stating: "You cannot find a defendant guilty of the crime of spousal rape as alleged in Count III based solely upon the testimony of the victim unless her testimony is corroborated by other independent evidence." The prosecutor proposed a jury instruction consistent with former CALJIC No. 10.60, that it is not essential to a conviction on the charge of rape that the testimony of the victim be corroborated. The court denied both special instructions, explaining: "I find there was adequate corroboration to corroborate it. It is an untested section, and none of us know[s] exactly what it means. That motion's denied as to 10[.]60. That says they don't have to find corroboration. [¶] And as to [defendant's] special instruction, I think it's the fair and just way to do it. Just give no instruction on the corroboration and not to give 10[.]60 saying, though, corroboration. But I'm not going to give the other one either."

Defendant argues that the trial court erred by not instructing the jury that it had to find the requisite corroboration for the victim's testimony. He insists that the statute requires corroboration as a part of the statute of limitations and that the statute of limitations is an element of the offense which the prosecutor must plead and prove beyond a reasonable doubt.

The People respond that the requirement of corroboration is in this context a threshold requirement to be resolved by the trial court before the prosecution itself can proceed and that it is not a factual determination for the jury. We find this interpretation more reasonable.

Section 262(b) provides that: "Section 800 shall apply to this section. However, no prosecution shall be commenced under this section unless the violation was reported . . . within one year after the date of the violation. This reporting requirement shall not apply if the victim's allegation of the offense is corroborated by independent evidence that would otherwise be admissible during trial." The specific language used in this subdivision, i.e. "no prosecution shall be commenced . . ." and "evidence that would otherwise be admissible during trial" indicates determinations or decisions ordinarily made by the trial court. Questions concerning the admissibility of evidence at trial are questions of law for the trial court to determine. (See Evid. Code, § 402 [existence of a preliminary fact/question of admissibility

of evidence are for the trial court].) Moreover, the statute does not require that the evidence actually be admitted at trial, rather that it be evidence that would be admissible. This is not a question within the jury's purview.

In fact, Evidence Code section 402 hearings are regularly used prior to trial to consider the presence of foundational facts, such as the voluntariness of a confession or the necessity for an expert witness.[6] (See Evid. Code, § 402, subd. (b); see also, e.g., *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126 [93 Cal.Rptr.2d 356] [hearing on need for testimony of expert on domestic violence]; *People v. Accardy* (1960) 184 Cal.App.2d 1, 4 [7 Cal.Rptr. 167] [admissibility of evidence or facts preliminary to admission is a question of law for court].) These are mixed questions of fact and law and are clearly not questions for jury decision.

Moreover, this is not an actual question of the statute of limitations, which for spousal rape is six years. (§ 800.) Rather, the statute expresses a concern about timely reporting and may have been thought to have some bearing on credibility.[7]

There is a notable difference between the wording of section 1111, which provides that "[a] conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; . . ." Evidentiary requirements for a conviction are within the purview of the jury. In addition, the purpose behind this accomplice testimony requirement is to prevent lay jurors from arriving at a verdict of conviction as to a defendant based solely upon evidence which is possibly tainted by an accomplice's desire to secure leniency through implicating others. (*People v. McGavock*

---

[6]Here, the trial court did the best it could under the circumstances, given that it was not presented with a specific request for an Evidence Code section 402 hearing nor with any affidavits or actual evidence to consider.

[7]The Attorney General points out that California is one of the few states to impose such a reporting requirement and that several states recently have repealed similar statutory reporting requirements. (See S.D. Codified Laws Ann. § 22-22-1.1 [repealed by SL 1990, ch. 161, § 1]; 18 Pa. Cons. Stat. Ann. § 3128 [repealed 1995 by P.L. 985, No. 10, § 10].) The Attorney General also notes that other states have found any distinction between marital and nonmarital rape to be unconstitutional. (See *People v. Liberta* (1984) 64 N.Y.2d 152, 167 [474 N.E.2d 567, 575-576], and cases cited therein.)

We also note that prior to 1993, this subdivision had read "(b) The provisions of Section 800 shall apply to this section; however, there shall be no arrest or prosecution under this section unless the violation of this section is reported to a peace officer having the power to arrest for a violation of this section or to the district attorney of the county in which the violation occurred, within 90 days after the day of the violation." Although we have found no helpful legislative history, it seems the Legislature attempted to ease the reporting requirement for spousal rape. We respectfully suggest the time has come to eliminate such a requirement. (See Stats. 1983, ch. 1193, § 1, p. 4510.)

(1999) 69 Cal.App.4th 332 [81 Cal.Rptr.2d 600].) This concern is not present in a charge of spousal rape.

In sum, we conclude that the trial court properly used evidence of defendant's other acts of domestic violence as well as his own statements to the police to corroborate the victim's allegation as required by section 262(b). We find no errors in the court's denial of defendant's motion to dismiss the charge nor in the court's refusal to present the question of corroboration to the jury.

## II

### *Juror Misconduct*

 Defendant also complains that the trial court erred in denying his motion for new trial based on jury misconduct.

 The law is well established. Evidence obtained by jurors from sources other than in court is misconduct and constitutes grounds for a new trial if the defendant has been prejudiced thereby. (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 255 [15 Cal.Rptr.2d 112].) "In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry. [Citation.] First, it must determine whether the affidavits supporting the motion are admissible. (Evid. Code, § 1150.) If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.] Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial. [Citations.] A trial court has broad discretion in ruling on each of these issues, and its rulings will not be disturbed absent a clear abuse of discretion. [Citations.]" (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703-704 [40 Cal.Rptr.2d 384].)

" 'As a general rule, juror misconduct "raises a presumption of prejudice that may be rebutted by proof that no prejudice actually resulted." [Citations.]' [Citation.] In determining whether misconduct occurred, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination. [Citations.]' [Citation.]" (*People v. Majors* (1998) 18 Cal.4th 385, 417 [75 Cal.Rptr.2d 684, 956 P.2d 1137], fn. omitted.)

 In support of his motion for new trial on the grounds of juror misconduct, defendant filed a declaration from one juror stating that another

juror told the jurors that he "had taken a course in which he had studied body language. [The juror] argued that based on his studies, after observing the body language of [defendant] while testifying, that [defendant] was lying." Defendant claimed that the juror impermissibly had interjected extrajudicial facts into the deliberation process and that such misconduct prejudiced the defense. The trial court denied the motion for new trial, stating: "[T]he fact that this juror casually mentioned that he had taken a body language course, I mean, the way I see it, is pretty innocuous, even if you take that as true. [¶] In the Court's view, [defendant] got up on the stand and was one of the worst witnesses I've ever seen. I mean, his lying was obvious to everybody. No one needed a body language course to conclude he was lying. [¶] Even if you assume all that, I don't think it gets us anywhere. I think the jurors have a right to evaluate the demeanor."

Defendant now argues that the juror implied he had special expertise in this area and based on this expertise, he could evaluate defendant's credibility or lack thereof.

We interpret the trial court's comments as concluding that no misconduct occurred.[8] Of course it is the very function of the jury to evaluate the credibility of witnesses. Jurors are instructed to consider the demeanor and manner of the witness while testifying in order to determine the witness's believability. (See CALJIC No. 2.20.) The juror who volunteered that he had taken a course in body language did not describe himself as an expert, nor was there any reason to consider him as such. (Cf. *In re Malone* (1996) 12 Cal.4th 935, 963 [50 Cal.Rptr.2d 281, 911 P.2d 468] [jury forewoman, who was psychologist, told other jurors that she had read and discussed professional articles on polygraphs, and that while polygraph examiners claim an accuracy rate of 80 to 90 percent, as the defense expert had at trial, she reported that independent researchers had found accuracy rates of only 50 to 60 percent].)

Jurors are allowed to use their life experiences in performing their duties. " 'Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience. That they do so is one of the strengths of the jury system. It is also one of its weaknesses: it has the potential to undermine determinations that should be made exclusively on the evidence introduced by the parties and the instructions given by the court. Such a weakness, however, must be tolerated. "[I]t is an impossible standard to require . . . [the jury] to be a laboratory, completely sterilized and freed from any external factors." [Citation.] Moreover, under that "standard" few verdicts would be proof against challenge.'

---

[8] It is also arguable that the supporting declaration from one juror in fact described another juror's thought processes and thus was not admissible under Evidence Code section 1150.

[Citation.]" (*In re Carpenter* (1995) 9 Cal.4th 634, 650 [38 Cal.Rptr.2d 665, 889 P.2d 985].)

In numerous cases, courts have found jurors' generalized comments on matters of common knowledge or experience not to be misconduct. (See, inter alia, *People v. Majors, supra,* 18 Cal.4th at pp. 420-422 [juror did not commit misconduct by commenting to other jurors that no one sentenced to death in California within the past 15 years was actually executed; *People v. Fauber* (1992) 2 Cal.4th 792, 838-839 [9 Cal.Rptr.2d 24, 831 P.2d 249] [jurors did not commit misconduct by discussing during deliberations their personal anecdotes concerning drug use and its effect on memory]; *Akers v. Kelley Co.* (1985) 173 Cal.App.3d 633, 658-659 [219 Cal.Rptr. 513], disapproved on other grounds in *People v. Nesler* (1997) 16 Cal.4th 561, 582, fn. 5 [66 Cal.Rptr.2d 454, 941 P.2d 87] [jurors did not commit misconduct in products liability case by using their own experience and knowledge to express an opinion that the correct materials were not used].)

We do not find apposite the case of *People v. Pierce* (1979) 24 Cal.3d 199 [155 Cal.Rptr. 657, 595 P.2d 91], as relied on by defendant. In that case, the California Supreme Court found a jury foreman's misconduct was prejudicial and required a new trial. The foreman discussed the case during trial with a police officer who was a good friend and neighbor and had testified for the prosecution. The questions the foreman asked the officer indicated the foreman had doubts about the sufficiency of the prosecution's case and the officer's answers did not merely duplicate properly heard testimony.

We conclude that substantial evidence supports the trial court's determination that no misconduct occurred.

### DISPOSITION

The judgment is affirmed.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied July 12, 2001, and appellant's petition for review by the Supreme Court was denied September 26, 2001.