Filed 3/24/15  P. v. Paine CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>ANTHONY TODD PAINE,<br><br>    Defendant and Appellant. | C074375<br><br>(Super. Ct. No. CRF11-271) |

A jury convicted defendant Anthony Todd Paine of continuous sexual abuse of a child under 14 years of age (Pen. Code, § 288.5, subd. (a)) and found true an allegation that the abuse involved substantial sexual conduct (Pen. Code, § 1203.066, subd. (a)(8)). Defendant was sentenced to state prison for 16 years.

On appeal, defendant contends the trial court violated its duty to investigate juror misconduct. He also takes the fallback position that if we decline to address his juror misconduct contention because of counsel's failure to raise the issue in the trial court,

1

then he received ineffective assistance of counsel. We address defendant's primary contention and conclude there was no juror misconduct and, therefore, the trial court had no duty to investigate.

## STATEMENT OF FACTS

Since the sufficiency of the evidence is not an issue, we briefly set forth the facts.

Defendant was convicted of one count of continual sexual abuse against M., his stepgranddaughter. Defendant was married to M.'s grandmother. M. frequently stayed with defendant and her grandmother. During M.'s stays, starting when she was about 11 years old, defendant rubbed her chest on more than three occasions and rubbed her vaginal area at least three times during the accusatory period. M. did not tell her parents or her grandmother about the touching because she feared they would be angry with her. M. did tell her friend about the touching and the friend persuaded her to tell her teacher, which she did.

Defendant testified, denying ever molesting M. Defendant thought M. was lying because she was jealous of his relationship with her grandmother.

## DISCUSSION

Defendant contends the trial court violated its duty to conduct a hearing into juror misconduct based on a letter given to the court by Juror No. 2 after the verdict had been rendered and the jury dismissed. The letter cited various reasons why Juror No. 2 believed that some of the jurors had engaged in misconduct, including the following portion upon which defendant relies: "Eight of the twelve [jurors] decided [defendant] was guilty. Four of us were not convinced. [¶] When asked why those who reached a guilty [verdict] had come to that conclusion, two members said his body language and the way he presented his testimony indicated he was guilty. These jurors indicated that they had received training in reading body language and that [defendant's] behavior clearly indicated he was not telling the truth."

2

Defendant argues the jurors' statements they were trained in reading body language constituted an " 'improper injection of extrajudicial specialized information into the deliberations.' " We disagree.

" 'A juror . . . should not discuss an opinion explicitly based on specialized information obtained from outside sources. Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1265, citing *In re Malone* (1996) 12 Cal.4th 935, 963 (*Malone*).)

However, "[j]urors are allowed to use their life experiences in performing their duties. ' "Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience. That they do so is one of the strengths of the system. It is also one of its weaknesses: it has the potential to undermine determinations that should be made exclusively on the evidence introduced by the parties and the instructions given by the court. Such a weakness, however, must be tolerated. '[I]t is an impossible standard to require . . . [the jury] to be a laboratory, completely sterilized and freed from any external factors.' [Citation.] Moreover, under that 'standard' few verdicts would be proof against challenge." [Citation.]' [Citation.]" (*People v. Garcia* (2001) 89 Cal.App.4th 1321, 1339-1340 (*Garcia*).)

Reading the body language of a witness has long been recognized as a means of judging a witness's credibility. (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1414 [a witnesses' demeanor or body language is part of the evidence in a case].) Indeed, this concept is statutorily recognized in Evidence Code section 780 which provides: "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove

3

the truthfulness of his testimony at the hearing, including but not limited to any of the following: [¶] (a) His demeanor while testifying and the manner in which he testifies."[1]

*Garcia* rejected a claim essentially indistinguishable from that made by defendant herein. There, the defendant made a motion for a new trial on grounds of juror misconduct. The basis for the motion was a declaration from a juror "stating that another juror told the jurors that he 'had taken a course in which he had studied body language. [The juror] argued that based on his studies, after observing the body language of [the defendant] while testifying, that [the defendant] was lying.' [The] defendant claimed that the juror impermissibly had interjected extrajudicial facts into the deliberation process and that such misconduct prejudiced the defense." (*Garcia, supra*, 89 Cal.App.4th at pp. 1338-1339.) The trial court denied the new trial motion, stating: " '[T]he fact that this juror casually mentioned that he had taken a body language course, I mean, the way I see it, is pretty innocuous, even if you take that as true. [¶] In the Court's view, [the defendant] got upon the stand and was one of the worst witnesses I've ever seen. I mean, his lying was obvious to everybody. No one needed a body language course to conclude he was lying. [¶] Even if you assume all that, I don't think it gets us anywhere. I think the jurors have a right to evaluate the demeanor.' " (*Garcia, supra*, 89 Cal.App.4th at p. 1339.)

In upholding the trial court, *Garcia* stated: "Of course it is the very function of the jury to evaluate the credibility of witnesses. Jurors are instructed to consider the demeanor and manner of the witness while testifying in order to determine the witness's believability. [Citation.] The juror who volunteered that he had taken a course in body

---

[1] The jury was instructed per former CALCRIM No. 105, as follows: "You are the sole judges of the believability of a witness and the weight to be given to the testimony of each witness. In determining the believability of a witness, you may consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness, including . . . the demeanor and manner of the witness while testifying."

4

language did not describe himself as an expert, nor was there any reason to consider such. [Citation.]" (*Garcia, supra*, 89 Cal.App.4th at p. 1339.)

There is no significant difference between the facts of the present case and those of *Garcia*. Here, the jurors' comments essentially were that because of their training in reading body language they interpreted defendant's body language and the manner in which he presented his testimony as indicating guilt. However, there was no discussion regarding the substance of the two jurors' training or how they applied that training to the present case. The jurors did not hold themselves out as experts nor specialists in interpreting body language. Nor was there any attempt by the two jurors to persuade the other jurors based on anything they had learned from their training. Accordingly, we find there was no juror misconduct.

*Malone*, *supra*, cited by defendant in support of his misconduct of jury claim is of no aid to him. One of the issues in *Malone* involved the reliability of a polygraph examination taken by the defendant which he had passed. (*Malone, supra*, 12 Cal.4th at pp. 942-943.) During deliberations Juror Dianne Irwin, a psychologist, was asked by other jurors what she thought about polygraph examinations. (*Id.* at p. 947.) Irwin responded that "she was not an expert on polygraphs, but had read and discussed professional articles on the subject in the course of her studies in psychology; that while polygraph examiners claim an accuracy rate of 80 to 90 percent, Irwin was skeptical of that claim because independent researchers had found accuracy rates of only 50 to 60 percent;" and that a key question asked by the polygraph operator to defendant regarding whether he had killed the victim was ambiguously worded. (*Id.* at p. 948.) Irwin further "told the other jurors these beliefs were based on her readings rather than on her own experimental research." (*Ibid*.)

The *Malone* court concluded that Irwin's assertion that her "information was drawn from her own professional knowledge . . . was an improper injection of extrajudicial specialized information into the deliberations," which constituted juror

5

misconduct.  (*Malone, supra*, 12 Cal.4th at p. 963, fn. 16.)  The facts of *Malone* are a far cry from those in our case and from those in *Garcia*, neither of which involved jurors holding themselves out as experts or imparting statistics on the accuracy of the tests that may have been given.

DISPOSITION

The judgment is affirmed.


                                                   NICHOLSON     , Acting P. J.


We concur:


      MAURO        , J.


      HOCH         , J.