Filed 10/27/22  P. v. Dunlevy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JON PAUL DUNLEVY,<br><br>    Defendant and Appellant. | C095246<br><br>(Super. Ct. No. CR-2018-5167) |

A jury found defendant Jon Paul Dunlevy guilty of raping a sleeping woman (Pen. Code, § 261, subd. (a)(4)(A)), and the trial court sentenced him to six years in state prison.  Defendant contends on appeal that the trial court erred prejudicially by permitting the victim's mother to testify that the victim appeared more anxious and less social after the rape.  We conclude the trial court did not abuse its discretion by admitting this evidence because the mother's testimony was relevant to whether the victim had consented to sexual intercourse as defendant claimed.  Accordingly, we will affirm.

1

# BACKGROUND

Shelby H. and her friend, A.S., visited Shelby's boyfriend, A.M., at a home he shared with three roommates, including defendant. After Shelby, A.S., and A.M. returned from drinking at a bar, defendant and another man joined the group for more drinking and dancing in A.M.'s room. Although Shelby did not drink at A.M.'s house, she felt intoxicated from the drinks she had earlier at the bar.

A.      *Shelby's testimony*

A.S. fell asleep on an upright futon in A.M.'s room with her legs on defendant's lap. A.M. went to sleep in his own bed as he had to work in the morning. Shelby then smoked marijuana and felt "just kind of a little stoned."

As Shelby sat on A.M.'s bed, she saw defendant on the futon stroking A.S.'s thighs as she slept, which made Shelby uncomfortable. Shelby shared her marijuana with defendant, hoping he would fall asleep, but he did not.

After smoking together, Shelby asked defendant to help her lower the futon into its flat, "laid down position." Shelby then hopped on the futon next to A.S. to prevent defendant from touching A.S. while she slept. Shelby told defendant to lay on A.M.'s bed, and he did. Shelby then fell asleep sometime after 2:00 a.m.

Shelby awoke when she felt a penis penetrating her vagina. She thought it was her boyfriend, A.M., and gently pushed the person away, telling him she did not want him to do that right now because A.S. was sleeping next to her. When Shelby protested, the person stopped pushing his penis into her vagina for a few seconds before resuming. Shelby pushed the person away harder, at which point she felt chest hair and realized the person was not A.M., who had no chest hair. Shelby then started pushing more and saying, "[N]o, get off of me, you're raping me," and defendant rolled off of her.

Shelby was very upset afterwards. She spoke with A.M., called her mother, and later decided to call 911.

B.    *Defendant's testimony*

Defendant's version of events differed significantly from Shelby's.  He testified that after A.S. and A.M. fell asleep, Shelby changed her clothes in front of him, laid down next to him on the futon, and began touching herself sexually.  They touched each other sexually for about 20 minutes.  Shelby then helped defendant put his penis inside of her vagina.  Defendant immediately felt Shelby tense up, and she said that she did not want "to do this."  Defendant then backed away.

C.    *Shelby's mother's testimony*

Over defendant's objection, Shelby's mother testified that Shelby sounded terrified and was crying when Shelby called her after the rape.  Since the rape, Shelby has mostly been living with her mother; has suffered from increased anxiety; has rarely visited with friends; and has had nightmares.

Shelby's mother answered only 15 questions on direct examination, comprising less than three pages of the transcript.

D.    *Verdict and sentence*

The jury found defendant guilty of the lone charge, raping a sleeping woman.  The trial court sentenced defendant to the middle term of six years in state prison.

DISCUSSION

Defendant argues that the trial court erred prejudicially by permitting Shelby's mother to testify that Shelby appeared more anxious and less social after the rape.  He contends the mother's testimony was irrelevant and highly prejudicial victim-impact evidence, which is not admissible during the guilt phase of trial.  We disagree.

Initially, we reject defendant's characterization of the challenged testimony as "victim-impact evidence."  Evidence showing the direct impact of a defendant's acts on a victim's friends and family is admissible in the penalty phase of a capital trial "under [Penal Code] section 190.3, factor (a), as a circumstance of the crime, provided the evidence is not so inflammatory as to elicit from the jury an irrational or emotional

3

response untethered to the facts of the case." (*People v. Pollock* (2004) 32 Cal.4th 1153, 1180.) The testimony at issue here is not such evidence.

Shelby's mother's testimony did not describe the impact of defendant's acts on Shelby's friends and family. Rather, Shelby's mother described the impact of defendant's acts on Shelby to prove that she did not consent. As we will explain, the trial court properly determined that this testimony was relevant and did not create substantial danger of undue prejudice that substantially outweighed its probative value.

Relevant evidence is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)[1] In a rape case in which consent is at issue, "evidence is relevant if it establishes any circumstance making the victim's consent to sexual intercourse less plausible." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1124.) More specifically, evidence of a victim's severe emotional distress following a rape is admissible when there is conflicting testimony on the issue of consent. (*People v. Bledsoe* (1984) 36 Cal.3d 236, 251-252.) This is because normal lay jurors associate this type of severe emotional reaction with rape, and it can provide "persuasive corroboration of [a victim's] testimony that she had not consented to the sexual encounter." (*Id*. at pp. 247-248, quote at p. 252.)

In this case, Shelby testified she awoke to find defendant having sexual intercourse with her against her will, whereas defendant testified that Shelby initiated the sexual interaction and, once she changed her mind, he stopped. Whether Shelby consented to having sex with defendant was a "disputed fact that is of consequence to the determination of the action," making testimony about Shelby's emotional state after the rape relevant. Given the relevance of Shelby's mother's testimony, defendant's citations

---

[1]     Undesignated statutory references are to the Evidence Code.

4

to *People v. Diaz* (2014) 227 Cal.App.4th 362 and *People v. Covarrubias* (2015) 236 Cal.App.4th 942, where the trial courts admitted highly emotional testimony "unrelated to the charged offense," are inapt. (*Diaz, supra*, at pp. 379, 380 [trial court erred by admitting "highly emotional footage of victims and their families discussing the impact of alcohol-related crashes, unrelated to the charged offense"]; *Covarrubias, supra*, at p. 950 [trial court erred by admitting testimony from the families of victims of alcohol-related crashes "unrelated to Covarrubias's charged offense"].)

While defendant largely concedes the relevance of Shelby's mother's testimony, he argues that the trial court should have excluded the testimony as unduly prejudicial under section 352. For a trial court to properly exclude relevant evidence under section 352, its probative value must be "substantially outweighed by the probability that its admission will . . . create a substantial danger of undue prejudice." (§ 352.) "The prejudice which exclusion of evidence under [] section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) Rather, in order for a "substantial danger of undue prejudice" to "substantially outweigh[]" (§ 352) the probative value of the evidence, the evidence must "uniquely tend[] to evoke an emotional bias against defendant as an individual and [have] very little effect on the issues." (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)

We review a trial court's rulings regarding relevancy and admissibility under section 352 for abuse of discretion. (*People v. Jones* (2017) 3 Cal.5th 583, 609.) We will not reverse a ruling on such matters unless " ' " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Ibid*.) Defendant has failed to clear this high bar.

Shelby's mother's testimony did not evoke an improper emotional bias against defendant while having little effect on the issues. Instead, her testimony directly undermined defendant's testimony that he engaged in consensual sexual conduct with

5

Shelby by raising the inference that Shelby's increased anxiety and decreased socialization resulted from rape, rather than the consensual conduct defendant described. While such evidence may be damaging to defendant's consent defense, it is not the type of "undue prejudice" section 352 was designed to eliminate. (*People v. Karis, supra*, 46 Cal.3d at p. 638.) Given Shelby's testimony about the rape itself, "[a]ny danger of undue prejudice, in the context of this case, is trivial." (*People v. Baker* (2021) 10 Cal.5th 1044, 1095; cf. *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1102-1103 [testimony from two alleged prior victims of uncharged sexual misconduct against a defendant charged with similar acts of sexual misconduct against three similar victims was not unduly prejudicial]; *People v. Garcia* (2001) 89 Cal.App.4th 1321, 1334-1336 [trial court properly admitted testimony that the defendant had violated a restraining order and battered a victim one year after he had allegedly raped the same victim].) This is especially true since the trial court permitted defendant to question Shelby about taking antidepressant medication before the rape, which tended to mitigate the impact of Shelby's mother's testimony. Nor does the potential for the jury to view Shelby's mother as a sympathetic figure mean the trial court abused its discretion by admitting her testimony.

In *People v. Kipp* (1998) 18 Cal.4th 349, the trial court did not err by admitting testimony of the mother of the victim of an uncharged rape and murder against a defendant charged with another rape and murder. (*Id*. at pp. 373-374.) Compared to the mother in *Kipp* testifying about her murdered daughter, Shelby's mother's testimony about her daughter's increased anxiety after the rape was less likely to evoke sympathy from the jury. And, like in *Kipp*, Shelby's mother's testimony was "brief, factual, and, so far as the record shows, included no overt emotional display." (*Id*. at p. 374.) Shelby's mother answered only 15 questions on direct examination, including introductory questions. The questions and responses comprise less than three pages of the transcript.

In sum, we cannot say that the trial court's finding that the probative value of Shelby's mother's testimony was not "substantially outweighed by the probability that its admission" would "create a substantial danger of undue prejudice" was arbitrary, capricious, or patently absurd, so we conclude the trial court did not abuse its discretion in these circumstances.

## DISPOSITION

The judgment is affirmed.


        KRAUSE        , J.


We concur:


      HULL        , Acting P. J.


      EARL        , J.