[Crim. No. 12543. Fourth Dist., Div. Two. Dec. 15, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMONDO NAVARRO et al., Defendants and Appellants.

786

COUNSEL

Alison L. Braun and Gary Jay Kaufman, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Thomas F. McArdle, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**KAUFMAN, J.**—Defendants Armondo Navarro and Jose Luis Huerta were charged by information with forcible rape (Pen. Code, § 261, subd. (2)) and statutory rape (Pen. Code, § 261.5).[1] Invoking the enhancement provided by section 264.1, it was further alleged that they acted in concert in committing the forcible rape. Trial was to the court. The court found defendants guilty of forcible rape, found to be true the allegation that they acted in concert and dismissed as moot the charge of statutory rape.

At sentencing, the court struck the acting-in-concert allegation and sentenced each defendant to state prison for the lower term of three years. The court stated, however, that it would have granted the defendants probation with jail time had it not concluded they were ineligible for probation because of section 1203.065 which prohibits probation for certain sex offenses, including forcible rape.[2] Defendants appeal from the judgment of conviction.

### Factual Background

Defendant Navarro is the stepfather of the victim, Sharron T., who at the time of the alleged incident was 17 years old and living at home. On the night of September 27, 1980, defendants were at the Navarro home drinking beer. At around 8 p.m. they asked Sharron and she agreed to join them in a game of pool. Afterwards they stopped at five bars. The defendants drank beer; Sharron did not. On their way home, defendants stopped at a liquor store, purchased some beer for themselves and a bottle of Wild Turkey for Sharron.

Sharron then went to her neighbor, Roger's home, gave him the bottle of Wild Turkey and agreed to accompany him to another bar to pick up his friend. While waiting for Roger in his truck, Sharron saw the de-

---

[1]Unless otherwise specified, all references will hereafter be to the Penal Code.

[2]In rendering sentence the trial judge stated: "THE COURT: Mr. Navarro, you will please stand. [¶] In the matter of Armondo Navarro, CR17934 it is the order of the court that probation is denied. The defendant is committed to State Prison on violation of 261 subd. 2 for the low term of 3 years. The court hereby orders stricken the in concert allegation and the striking of the in concert is already based on what I consider mitigating circumstances. I've already indicated that if I had the authority, which I conceive that I do not under 1203.065, I would have granted probation and given jail time and not committed you to State Prison."

fendants exit the bar. Navarro asked her to drive the car to a gas station because he was drunk. Apparently all the gas stations were closed. They then drove to several other bars.

After they left the last bar, Navarro told Sharron to stop the car. She stopped and parked the car at the side of the road located near a dirt field. The area was very dark and the nearest lights came from a factory about three miles away. Defendants got out of the car. Navarro walked around the car, opened the door on the driver's side and told Sharron to get out. Navarro then said that she "was going to fuck Jose." Sharron attempted to escape but Navarro chased and wrestled her to the ground. Sharron got away and ran back to the car and locked herself in. However, one of the defendants had the car keys and opened the door. Huerta then dragged Sharron out of the car by her feet and into an adjacent dirt field. Sharron was able to get away until Navarro finally knocked her down. Navarro then pulled her pants down to her knees and held her hands down to her side while Huerta raped her.

Sharron then wiped herself with her clothes, got dressed and, together with the defendants returned to the car. Navarro repeated what he said earlier that "he wanted it for a long time." As they arrived home, Sharron honked the car horn, ran into the house crying and screaming and told her mother that the defendants had raped her.

Navarro followed Sharron into the house and when asked by Mrs. Navarro whether this had happened, replied, "Yes." When asked why, Navarro said he had wanted it for years. Sharron's brother then called the police.

At trial, Sharron testified to the foregoing events. Mrs. Navarro testified for the prosecution and stated that the night before the alleged incident, Navarro had told her that he was planning to leave the family but would send money to cover the family's expenses. Sharron had overheard the conversation and was extremely upset that the defendant was planning to abandon her mother. Mrs. Navarro then testified that later that evening, after Navarro had been drinking, he said to her, "don't be surprised if the next thing that she cries is rape in order to try to break us up."

Dennis Love, Deputy Sheriff of the County of Riverside, and Paul Sham testified for the prosecution. Deputy Sheriff Love accompanied Sharron to the area where the rape allegedly occurred but was unable

to locate tire marks or physical evidence of a struggle to pinpoint the scene of the crime. Mr. Sham, a criminalist for the Riverside Laboratory of the California Department of Justice, testified that the new pair of jeans Sharron had been wearing had dirt in and around the hip pockets and in a cuff of one leg. He found no seminal fluid on Sharron's jeans or on her underpants. There was evidence that a button was missing from the blouse Sharron was wearing.

Navarro testified on his own behalf and essentially denied the accusations made against him. He testified that it was at Sharron's and Huerta's request that he agreed to stop the car near a dirt field. Sharron and Huerta exited the car and walked about 20 feet away. Navarro remained in the car. After five or ten minutes, they returned to the car, laughing. He could not remember whether, upon returning home, he admitted raping Sharron to his wife. Huerta's testimony was consistent with that of Navarro.

*Common Contention Advanced by Both Defendants*

■ Defendants contend that the trial court erred in concluding that they were ineligible for probation because of the provisions of subdivision (a) of section 1203.065 which read: "(a) Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, *any person convicted of violating subdivision (2) of Section 261*[3] or Section 264.1, subdivision (b) of Section 288, or 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm." (Italics added.)

Defendants were convicted of forcible rape in violation of section 261, subdivision (2), and, on the face of it, probation would appear to be plainly prohibited by section 1203.065, subdivision (a). Defendants contend, however, that such a literal reading of subdivision (a) is inconsistent with subdivision (b) of the same section which reads: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person convicted of *a violation of Section 220 for assault with intent to commit*

---

[3]Subdivision 2 of section 261 defines rape as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances .... [¶] 2. Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another."

rape, sodomy, oral copulation or any violation of Section 264.1, subdivision (b) of Section 288, or Section 289." (Italics added.)

There is no inconsistency between subdivisions (a) and (b) of section 1203.065. Subdivision (a) prohibits probation when the defendant has been convicted of one of the sex crimes specified in the subdivision—when the sex crime was completed. Subdivision (b) permits the granting of probation in unusual cases where the defendant has been convicted of *assault* with intent to commit any of the specified crimes—when the underlying sex crime itself was not completed.

■ Next, defendants contend that the Legislature could not have intended to prohibit probation in all forcible rape cases because it has provided in subdivision (a)(1) of section 1203.06, prohibiting the granting of probation to any person who personally used a firearm during the commission or attempted commission of certain crimes, the following: "(vii) *Except as provided in Section 1203.065,* rape in violation of subdivision (2) of Section 261."[4] (Italics added.) Read literally, section 1203.065 does not authorize probation for any defendant convicted of forcible rape, so defendants argue that the exception provided in subsection (vii) of subdivision (a)(1) of section 1203.06 is meaningless if section 1203.065 is read literally. And, understandably, defendants remind us that statutes relating to a common subject are to be construed together and that a construction is to be avoided which renders any provision meaningless.

Of course, as the Attorney General argues, subdivision (a)(1) of section 1203.06 deals with persons who used a firearm in the commission

---

[4]Insofar as pertinent to this appeal, section 1203.06 provides: "Notwithstanding the provisions of Section 1203:

"(a) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons:

"(1) Any person who personally used a firearm during the commission or attempted commission of any of the following crimes:

"(i) Murder.

"(ii) Assault with intent to commit murder, in violation of Section 217.

"(iii) Robbery, in violation of Section 211.

"(iv) Kidnapping, in violation of Section 207.

"(v) Kidnapping for ransom, extortion, or robbery, in violation of Section 209.

"(vi) Burglary of the first degree, as defined in Section 460.

"(vii) Except as provided in Section 1203.065, rape in violation of subdivision (2) of Section 261.

"(viii) Assault with intent to commit rape, the infamous crime against nature, or robbery, in violation of Section 220."

of certain offenses and, as such, has no applicability to the case at bench. Defendants, however, do not argue that section 1203.06 is directly applicable; they merely point to the exception in paragraph (vii) of subdivision (a)(1) as indicating that the Legislature must have intended section 1203.065 to authorize the granting of probation to a defendant convicted of forcible rape under some circumstances.

The Attorney General points out that there is no real conflict between the two sections because subsection (vii) of section 1203.06, subdivision (a)(1), provides that probation may be granted only as provided in section 1203.065 and since section 1203.065 prohibits the granting of probation to any defendant convicted of forcible rape, defendants are simply not eligible for probation.

Moreover, it is urged by the Attorney General that rather than reflecting a legislative belief that section 1203.065 does permit probation in cases of forcible rape under some circumstances, subsection (vii) of subdivision (a)(1) of section 1203.06 simply discloses that the Legislature made a mistake in the drafting of section 1203.06. Normally, we would not find such an argument persuasive, but in this particular case we do.

First, as the Attorney General points out, several other subsections of subdivision (a)(1) of section 1203.06 contain patent drafting errors. For example, the next subsequent subsection, (viii), provides that probation will not be granted to a defendant who personally used a firearm in the commission of "[a]ssault with intent to commit rape, the infamous crime against nature, *or robbery*, in violation of Section 220." (See fn. 4, *ante*; italics added.) There is no such crime as assault with intent to commit robbery under section 220, because it was deleted by amendment in 1978. (Stats. 1978, ch. 579, § 12, p. 1982.) Section 1203.06, which has undergone two amendments since 1978, has not yet been amended to conform to section 220.

Similarly, in subsection (ii) of subdivision (a)(1) of section 1203.06, reference is made to "[a]ssault with intent to commit murder, in violation of Section 217." (See fn. 4, *ante*.) Again, no such crime exists. Section 217 was repealed (Stats. 1980, ch. 300, § 2, p. 268) at the same legislative session in which section 1203.06 was last amended (Stats. 1980, ch. 587, § 4, p. 1597).

Secondly, and more importantly, the mistake is obvious; the introductory phrase, "Except as provided in Section 1203.065" should have been placed not in subsection (vii) but in subsection (viii) dealing with assaults to commit rape or the infamous crime against nature. As previously stated, section 1203.065 *does* in subdivision (b) authorize probation for convictions of assault with intent to commit those offenses in "unusual cases." Literally read as defendants urge they be, subsections (vii) and (viii) produce an absurd result. If the defendant used a firearm in the commission of an assault with intent to commit rape, probation is foreclosed under (viii) because it contains no exception based on section 1203.065, notwithstanding that section 1203.065 does provide for probation in unusual cases where use of a firearm is not involved. However, if the defendant used a firearm in actually committing forcible rape he would be eligible for probation under (vii) if section 1203.065 were interpreted as authorizing probation in unusual cases. In other words, probation would be permitted in a completed rape with use of a firearm but not in an assault with intent to rape with use of a firearm. The statutory scheme is to prohibit probation in the more serious rather than the less serious offenses, and the Legislature could not have intended the result produced by the reference to section 1203.065 in subsection (vii) rather than in (viii) where it belongs.

While we are reluctant to reach a decision that recognizes that subsection (vii) is meaningless as section 1203.065 is presently worded, we are constrained to do so by the manifest statutory purpose of denying probation to persons convicted of the completed sex crimes specified in subdivision (a) of section 1203.065 and the absolutely plain, clear mandate of that subdivision that "[*n*]*otwithstanding any other provision of law*, probation shall not be granted to . . . any person convicted of violating subdivision (2) of Section 261 [forcible rape] . . . ." (Italics added.)

*Contentions Raised by Navarro*

I

Navarro contends that there is insufficient evidence to support the judgment of conviction. Specifically, he claims that there was overwhelming evidence that the complaining witness lacked candor and that there was scant evidence of a struggle or that the victim was in fact raped.

In reviewing a criminal conviction based upon a challenge that there is insufficient evidence, it is incumbent on the appellate court to "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial, reasonable, and credible evidence, of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738]; *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People* v. *Reyes* (1974) 12 Cal.3d 486, 496 [116 Cal.Rptr. 217, 526 P.2d 225]; *People* v. *Vann* (1974) 12 Cal.3d 220, 225 [115 Cal.Rptr. 352, 524 P.2d 824].)" (*People* v. *Gayther* (1980) 110 Cal.App.3d 79, 86 [167 Cal.Rptr. 700].) We have done so and conclude that defendant's contention is wholly unmeritorious.

Defendant urges that the facts that Sharron voluntarily accompanied the defendants on their drinking spree and was the source and cause of the family's tension and division render her testimony incredible. We disagree. In *People* v. *Golden* (1961) 55 Cal.2d 358 [11 Cal.Rptr. 80, 359 P.2d 448], a case upon which defendant relies, the defendant, convicted of rape, argued that the victim's testimony was inherently improbable. Although the court acknowledged that the victim's testimony was uncertain and inconsistent, it also recognized that "'evidence which is unusual or inconsistent is not necessarily improbable.' [Citation.]" (*Id.*, at p. 365.) The court therefore concluded that the record amply suggested credible explanations for the victim's apparent inconsistencies in her testimony.

This is a much easier case. The record, as in *Golden*, suggests credible explanations as to why Sharron accompanied the defendants on the night of the rape. Initially, Sharron agreed to join them in a game of pool. Later on that evening she agreed to drive them around because her stepfather said he was too drunk to drive. Under the circumstances the jury could well have believed that Sharron innocently wanted to play pool and was sufficiently concerned for her stepfather's safety, or even public safety, to drive him around. Defendant's claim that Sharron was the cause of the family's tension and division is not established by the evidence as a matter of law. Mrs. Navarro testified that Sharron was extremely upset because she did not want defendant to abandon her mother as he had planned to do. That would indicate she was trying to keep the family together, not divide it.

Defendant next argues that there was little evidence of a struggle or that Sharron was in fact raped. However, Sharron so testified and the court obviously believed her testimony. Her testimony was not without corroborative evidence. There was dirt in and on her new jeans and a button was missing from her blouse, not to mention defendant's admission to his wife that he had participated in the rape of Sharron.

## II

■ Defendant contends that the trial court abused its discretion under Evidence Code section 352 in admitting the testimony of Mrs. Navarro that defendant said, "don't be surprised if the next thing that she cries is rape in order to try to break us up." Defendant contends that error was not harmless because without the statement, "it is obvious" that the court would have reached a different verdict. We do not agree.

First and most importantly, defendant failed to object on the stated ground that the probative value of the testimony was outweighed by its prejudicial effect. Therefore, defendant is deemed to have waived the objection and the point cannot be raised on appeal. (Evid. Code, § 353, subd. (a); *People v. Reyes*, *supra*, 12 Cal.3d 486 at p. 505 [116 Cal.Rptr. 217, 526 P.2d 225]; *People v. Brice* (1957) 49 Cal.2d 434, 437 [317 P.2d 961].)

In addition, defendant has failed to demonstrate that the trial court abused its discretion. It is well settled that in determining the propriety of admitting or rejecting proffered testimony, the trial court is vested with wide discretion (*People v. Green* (1980) 27 Cal.3d 1, 19 [164 Cal.Rptr. 1, 609 P.2d 468]; *People v. Wein* (1977) 69 Cal.App.3d 79, 90 [137 Cal.Rptr. 814]) and that the court's decision will not be overturned on appeal unless there is a manifest abuse of discretion resulting in a miscarriage of justice. (*Ibid.*; Cal. Const., art. VI, § 13.) Defendant claims that the statement had very little probative value. Quite the contrary, the statement tended to prove that the rape was preconceived and tended to corroborate the victim's testimony.

Finally, defendant has failed to demonstrate that the alleged error resulted in a miscarriage of justice. Upon reviewing the evidence we conclude that, in light of defendant's admission to his wife that he par-

ticipated in the rape of the victim, it is not reasonably probable that the result would have been more favorable to the defendant had the challenged evidence been excluded. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den. (1957) 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70].)

## III

■ Lastly, defendant contends that the trial court erred in denying his motion to modify the judgment under subdivisions 6 and 7 of section 1181.[5] Defendant essentially argues that because the trial judge would have granted probation but for the mandate of section 1203.065, subdivision (a), he could have modified the judgment to obtain the desired result. This could have been accomplished, defendant claims, by either striking the finding that the rape was accomplished by force or finding defendant guilty of statutory rape (§ 261.5), rather than forcible rape. His contention is without merit.

In the first place, it is entirely unclear whether or not defendant moved the court under section 1181 to modify the judgment. A written motion was filed by Huerta's attorney, not defendant's. At trial, Huerta's attorney purported to make the motion on behalf of both defendants but nothing in the record indicated that Navarro joined in the motion. Secondly, subdivisions 6 and 7 permit the court to modify the judgment only when "the verdict or finding is contrary to law or evidence." The statute does not authorize the court to modify the judgment for the purpose of making the defendant eligible for probation when the judgment is supported by the evidence and is in accordance with the law.

---

[5]Subdivisions 6 and 7 of section 1181 provide that the court may grant a new trial:
"6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed;
"7. When the verdict or finding is contrary to law or evidence, but in any case wherein authority is vested by statute in the trial court or jury to recommend or determine as a part of its verdict or finding the punishment to be imposed, the court may modify such verdict or finding by imposing the lesser punishment without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed."

## DISPOSITION

The judgment of conviction is affirmed as to each defendant.

Gardner, P. J., and McDaniel, J., concurred.

On January 15, 1982, the opinion was modified to read as printed above. The petition of appellant Navarro for a hearing by the Supreme Court was denied March 10, 1982.