# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHNNY GONZALES, on behalf of
himself and all others similarly
situated,

     *Plaintiff-Appellee,*

v.

ARROW FINANCIAL SERVICES, LLC,
     *Defendant-Appellant.*

No. 10-55379

D.C. No.
3:05-cv-00171-JAH-
RBB

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
June 6, 2011—Pasadena, California

Filed September 23, 2011

Before: Betty B. Fletcher and N. Randy Smith, Circuit
Judges, and James S. Gwin, District Court Judge.*

Opinion by Judge B. Fletcher;
Dissent by Judge N.R. Smith

*The Honorable James S. Gwin, District Judge for the U.S. District
Court for Northern Ohio, Cleveland, sitting by designation.

## COUNSEL

David M. Schultz, Joel David Bertocchi, and Jennifer W. Weller, Hinshaw & Culbertson, LLP, Chicago, Illinois, for the defendant-appellant.

Elizabeth J. Arleo, Arleo Law Firm, Ramona, California, Owen Randolph Bragg and Craig M. Shapiro, Horwitz, Horwitz & Associates, Chicago, Illinois, Shaun Khojayan, Beverly Hills, California, and Richard John Rubin, Santa Fe, New Mexico, for the plaintiff-appellee.

## OPINION

B. FLETCHER:

Appellant Arrow Financial Services ("Arrow") appeals the district court's decision, on summary judgment, that letters sent by Arrow to nearly 40,000 California residents constituted "false, deceptive, or misleading representation[s] . . . in connection with the collection of any debt" in violation of the

federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. It also appeals a jury's award, after trial, of statutory damages under both the FDCPA and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 et seq. Arrow contends that the Rosenthal Act does not permit class actions, and that permitting class plaintiffs to recover statutory damages under both the FDCPA and Rosenthal Act violates the FDCPA. We have jurisdiction under 28 U.S.C. § 1291. We disagree with Arrow's contentions and affirm the district court.

## I.

Arrow Financial Services is a debt buyer and collector. It purchases consumer debts that have been written off by the original creditor. Most debt buyers acquire the debts for a fraction of the balance, but then attempt to collect the entire debt.[1] In 2002, Arrow purchased a portfolio of debts owed to health clubs. All of these debts were more than seven years old; accordingly, pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681c(a)(4), none of these debts could be reported to a credit reporting agency. They were, to use industry parlance, "obsolete." *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 948 (9th Cir. 2001) (citing 15 U.S.C. § 1681c(a)). As a general practice, Arrow does not report obsolete debts. In 2004, Arrow attempted to collect on this portfolio of debts by sending substantially identical letters to nearly 40,000 California residents. One of those residents was Johnny Gonzales, the named plaintiff in this action. The letter informed Mr.

---

[1]See Robert M. Hunt, *Collecting Consumer Debt in America*, FED. RES. BANK OF PA BUS. REV. 15 (2007) (estimating that the average price for purchase of an obsolete debt at $0.045 per dollar), *available at* http://www.philadelphiafed.org/research-and-data/publications/business-review/2007/q2/hunt_collecting-consumer-debt.pdf; *see also* Adam J. Levitin, *Hydraulic Regulation: Regulating Credit Markets Upstream*, 26 YALE J. REG. 143, 192 (2009) (noting the sizeable growth in the debt buying industry).

Gonzales that he owed a **"PAST DUE BALANCE"** to "Holiday Spa of Calif". It stated:

> Dear JONNY [sic] GONZALES,
>
> At this time we are willing to settle your past due account for 50% of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before May 28 2004.
>
> *** **Settlement Amount $276.48 You Save $276.49** ***
>
> Upon receipt of the settlement amount and clearance of funds, and *if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled*. Please mark the appropriate box below.
>
> 1. [ ]   Enclosed find payment for the above-stated settlement amount. By depositing this payment in the sum of $276.48, you have accepted this as settlement. When my funds clear, and *if you are reporting the account, you will notify the appropriate credit bureaus of this settlement.*
>
>      . . . .
>
> Should you have any questions, please feel free to contact me . . . .
>
> **Important notice required by law:** This agency is engaged in the collection of debts. This communica-

tion is an attempt to collect a debt and any information obtained will be used for that purpose.

Finally, in bold letters, the letter instructed Gonzales to "Please see reverse side for important information." The "important information" was the following: "NOTICE TO CALIFORNIA RESIDENTS: As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." *Id.* at 90. All in all, the letter refers to credit bureaus three times. It twice states that if Arrow is reporting the debt, it will notify credit bureaus once the settlement funds clear, and also provides a notice that if a consumer fails to fulfill his credit obligations, negative information may be submitted to a credit reporting agency.

On receipt of the letter, Gonzales conducted an independent investigation and determined that Arrow could not legally report the debt to any credit bureau. On January 28, 2005, Gonzales filed suit on behalf of himself and a putative class, claiming violations of the FDCPA and the Rosenthal Act, because the letter would likely cause recipients to believe that their failure to pay the debts would result in negative credit reports. The district court certified a class to include 39,727 similarly situated Californians, and designated Gonzales as the class representative. On June 8, 2007, the district court granted summary judgment to Gonzales on the issue of liability under the FDCPA and the Rosenthal Act.

The district court then held a jury trial to determine the amount of damages. The court instructed the jury that class members could receive separate statutory damages pursuant to the FDCPA and the Rosenthal Act claims. The jury awarded Gonzales $250 on the FDCPA claim and an additional $250 on the Rosenthal Act claim. It awarded the class members $112,500 on the FDCPA claim and $112,500 on the

Rosenthal Act claim. The total damages awarded were $225,500.

## II.

We review the district court's grant of summary judgment de novo. *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. We review questions of law, including the district court's interpretations of the FDCPA and the Rosenthal Act, de novo. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

## III.

The FDCPA was enacted as a broad remedial statute designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices. *See, e.g.*, 15 U.S.C. §§ 1692b (governing the acquisition of location information), 1692e (prohibiting misleading or deceptive practices). The FDCPA does not ordinarily require proof of intentional violation, and is a strict liability statute. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). Though the Federal Trade Commission ("FTC") is empowered to enforce the FDCPA, 15 U.S.C. § 1692l, Congress encouraged private enforcement by permitting aggrieved individuals to bring suit as private attorneys general. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Prevailing plaintiffs, including class members, are

entitled to actual damages, statutory damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a).

As relevant here, section 1692e of the FDCPA broadly prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Act includes a non-exhaustive list of examples of proscribed conduct, including:

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

"Whether conduct violates [§ 1692e] . . . requires an objective analysis that takes into account whether the 'least sophisticated debtor would likely be misled by a communication.' " *Donohue*, 592 F.3d at 1030 (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007)); *see also Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988).[2] In this circuit, a debt collector's liability under

---

[2]The "least sophisticated debtor" or "least sophisticated consumer" standard is employed by the majority of the circuits. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999); *Campuzano-Burgos v. Midland Credit Mgmt. Inc.*, 550 F.3d 294, 298 (3d Cir. 2008); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1688 (2010); *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1505 (2010); *Ellis v. Solomon & Solomon P.C.*, 591 F.3d 130, 132 (2d Cir. 2010), *cert denied* 130 S. Ct. 333 (2010); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010).

The Seventh Circuit employs an "unsophisticated debtor" standard, which appears to differ from the majority test only in semantics. *See Chu-*

§ 1692e of the FDCPA is an issue of law.[3] *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).

The "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id.* (internal quotation marks omitted). The standard is "designed to protect consumers of below average sophistication or intelligence," or those who are "uninformed or naive," particularly when those individuals are targeted by debt collectors. *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000) (internal quotation marks omitted); *accord Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007) (cautioning that "if the debt collector has targeted a particularly vulnerable group," "the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of *that* group"). At the same time, the standard "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks omitted). The FDCPA does not subject debt collectors to liability for "bizarre," "idiosyncratic," or "peculiar" misinterpretations. *See id.*; *Strand v. Diversified Collection Serv. Inc.*, 380 F.3d 316, 318 (8th Cir. 2004).

---

*way v. Nat'l Action Fin. Serv. Inc.*, 362 F.3d 944, 948-49 (7th Cir. 2004) (noting that the least-sophisticated consumer is the "single most unsophisticated consumer who exists" and arguing that the "more precise benchmark" is the understanding of the "unsophisticated debtor") (citations and quotations omitted); *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (describing both tests).

[3]Because liability under § 1692e is an issue of law, Arrow's argument that this court should remand for a jury trial on liability necessarily fails. We recognize that in other circuits, whether a communication is likely to mislead the least-sophisticated debtor is an issue of fact. *See, e.g.*, *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999); *Gonzalez*, 577 F.3d at 607.

We reject Arrow's arguments that its letters do not violate the FDCPA[4] and hold that, under the least sophisticated debtor standard, the letters are misleading and impliedly threaten to take action that cannot be legally taken.

A. *Section 1692e(10)*

**[1]** Section 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect . . . any debt," has been referred to as a "catchall" provision, and can be violated in any number of novel ways. *Rosenau*, 539 F.3d at 224. Nevertheless, it is well established that "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (internal quotation omitted); *accord Kistner v. Law Offices of Michael P. Margelefsy, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34-35 (2d Cir. 1996).

Arrow wisely concedes that it had no intention of reporting the health club debts to a credit bureau and was legally prohibited from so doing. It argues, though, that because the letters employ conditional language ("*if* we are reporting the account"), it is wholly unreasonable to infer that Arrow could or would report the account. We disagree. At the outset, we emphasize that a literally true statement can still be misleading. *See, e.g.*, *Brown*, 464 F.3d at 455; *Avila v. Rubin*, 84 F.3d. 222, 226-27 (7th Cir. 1996). Arrow is also correct that faced with ambiguous language, an unusually savvy consumer (such as Gonzales) would seek clarification of whether his

---

[4]Arrow does not appeal the district court's determination that the letters violate the Rosenthal Act. Accordingly, we need not decide whether the Rosenthal Act's protections are fully co-extensive with the FDCPA. *See* CAL. CIV. CODE § 1788.17 (incorporating by reference the prohibitions in 15 U.S.C. § 1692e) (West 2009); CAL. CIV. CODE § 1788.13(f) (West 2009) (prohibiting the false representation that information concerning a debt is about to be reported to a consumer reporting agency).

debt could be reported. We are not, however, to read the language from the perspective of a savvy consumer, and consumers are under no obligation to seek explanation of confusing or misleading language in debt collection letters. *Fields v. Wilbur Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004).

**[2]** To the least sophisticated debtor, the phrase "if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled" suggests two possibilities. It suggests the possibility that Arrow was not reporting the debt to a credit reporting agency, and would accordingly make no further report in the event of settlement. But the phrase also suggests that, under some set of circumstances applicable to the recipient, Arrow could and would report the account.[5] Absent any possibility that Arrow *could* report the accounts, there would be no reason for Arrow to assert its intention to make a positive report in the event of payment. Only the first reading is actually correct, but the second reading is far from "bizarre" or "idiosyncratic"—it is eminently reasonable. As there is no circumstance under which Arrow could legally report an obsolete debt to a credit bureau, the implication that Arrow could make a positive report in the event of payment is misleading.

**[3]** The misleading nature of the "if we are reporting the debt" clause is compounded by the fact that Arrow did nothing to clarify when it could report a debt. Where the law places affirmative limits on a debt collector's actions, the debt

---

[5]*Cf. Ruth v. Triumph P'ships*, 577 F.3d 790, 801-02 (7th Cir. 2009) (holding that a notice claiming a right to collect and/or share information about the debtor "to the extent permitted by law" was misleading because there are no circumstances under which the law actually permits dissemination of a debtor's information); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 61-63 (2d Cir. 1993) (holding that letters stating "were our client to retain legal counsel in your area, and it was determined that suit should be filed against you, it could result in a judgment" conveys the erroneous impression that the debt collector had the authority to decide to institute legal action).

collector that "goes perilously close to an area of proscribed conduct takes the risk" that it will be liable under the FDCPA for misleading consumers. *Swanson*, 869 F.3d at 1228. When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril. *See Evory*, 505 F.3d at 778-79 (noting that debt collectors could protect the unsophisticated consumer against falsely believing a settlement offer is time-sensitive and non-renewable by including clarifying language to the effect of: "We are not obligated to renew this offer."); *cf. Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364-65 (2d Cir. 2005) (reiterating that "a letter sent on law firm letterhead, *standing alone*" represents that an attorney has been meaningfully involved in the collection process, but holding that impression was cured by a "clear disclaimer explaining the limited extent of [the attorneys'] involvement in the collection of [the recipient's] debt").

**[4]** Conditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability. *Cf. LeBlanc*, 601 F.3d at 1196 (rejecting a debt collector's reliance on the use of conditional language "in an effort to safeguard the letter from being construed as 'threatening' "). We decline to adopt Arrow's "hyper-literal" approach, which would permit it to "undermine the consumer protection goals of the statute" through a "flimsy disguise" of conditional language. *Nat'l Fin. Serv.*, 98 F.3d at 137-138. The phrase "if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled" is misleading, and violates 15 U.S.C. § 1692e(10). *Cf. Brown*, 464 F.3d at 455.

B.   *Section 1692e(5)*

**[5]** We turn next to the question of whether the letters also

violate section e(5).[6] Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Whether Arrow's letters could be construed by the least sophisticated debtor as threatening to report obsolete debt (when Arrow had no ability or intention to do so) presents a closer question. The letters are not overtly threatening. Nevertheless, a threat need not be express: it can be implied.

**[6]** We are persuaded that Arrow's letters, read as a whole, would be interpreted by the least sophisticated debtor as threatening to report (or continue to report) obsolete debts. Arrow argues that the letters promise only to make a "positive" report indicating full payment of the debt once payment cleared, and thus could not reasonably be read to imply a threat to make a "negative" report in the event of nonpayment. This argument fails. Setting aside the fact that Arrow could not legally make *any* report on these obsolete debts,[7] Arrow could only make a "positive" report if it had already placed, or would shortly place, a report of the obsolete debt in the debtor's file. Such a report would be "negative"— it would show that the debt was delinquent and unpaid. Indeed,

---

[6]We address each provision separately because, while a violation of section e(5) is a *per se* violation of section e(10), the reverse is not true. A "threat" to take legal action that a debt collector has no intention (or ability) to take is necessarily deceptive or misleading, but not all deceptive or misleading statements constitute threats actionable under section e(5). *See Ruth*, 577 F.3d at 802 (recognizing that a statement which violates e(5) also violates e(10)); *Brown*, 464 F.3d at 455 (expressing no opinion about whether a letter constitutes a threat under § 1692e(5) but holding that the letter could be a deceptive or misleading communication in violation of § 1692e(10)).

We also note that Gonzales need not establish a violation of each provision of the FDCPA cited. Violation of a single provision is sufficient to establish liability. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

[7]We emphasize that the least sophisticated consumer would be unaware of this fact, given that the letters misleadingly imply that Arrow has the ability to report the obsolete debts to credit bureaus.

Arrow specifically informed consumers in one of its letters that a "negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

**[7]** Logically, if Arrow failed to make a "positive" report indicating that the debt was satisfied, the "negative" report would remain on the debtor's record. In other words, the failure to make a positive report on an existing debt is the functional equivalent of a negative report. The least sophisticated debtor could conclude that, unless he paid the settlement amount or the full amount of the debt, Arrow would place a negative record in his credit report, or would decline to remove the negative record already in place. This reading is not bizarre or idiosyncratic. Accordingly, we hold that Arrow violated 15 U.S.C. § 1692e(5). We affirm the district court's grant of partial summary judgment for Gonzales on the FDCPA claim.

## IV.

Arrow also contends that the district court erred in instructing the jury that it could make separate awards of statutory damages under both the FDCPA and Rosenthal Act. It argues that the Rosenthal Act does not permit class actions. It also contends, in the alternative, that permitting class recovery under the FDCPA and the Rosenthal Act contradicts the spirit of the FDCPA. Arrow is wrong on both counts.

### A.   *Class Actions Under the Rosenthal Act*

**[8]** As originally enacted, the Rosenthal Act did not permit class actions. Rather, it provided that "any debt collector who willfully and knowingly violates this title with respect to any debtor shall . . . be liable to the debtor only in an individual action . . . for a penalty . . . not [ ] less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000). CAL. CIV. CODE § 1788.30(b). In 1999, however, the Califor-

nia legislature amended the Rosenthal Act to permit class actions.

The 1999 amendment states:

> *Notwithstanding any other provision of this title*, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and *shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.*

CAL. CIV. CODE § 1788.17 (emphasis added). Section 1692k of the FDCPA provides for class recovery of (1) actual damages up to $1,000 and (2) statutory damages not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. 15 U.S.C. § 1692k(a)(2).

By use of the phrase "notwithstanding any other provision,"[8] the 1999 amendment unambiguously supercedes any provision of the Rosenthal Act inconsistent with the referenced provisions of the FDCPA, including those subjecting debt collectors to class actions. The 1999 amendment did not delete the "individual action" provision, but by permitting class actions, it nullified the provision's effect. Further, the legislative history contains ample evidence that the 1999 amendment was intended to permit class actions. The Bill Analysis pre-

---

[8]California courts have routinely concluded that the phrase "notwithstanding any other provision" plainly and unambiguously supercedes contrary provisions. *See, e.g.*, *People v. Palacios*, 161 P.3d 519, 523-24 (Cal. 2007) (the phrase "notwithstanding any other provision" is "broad," "plain," and "means what it says"); *People ex rel. Lockyer v. Fremont Gen. Corp.*, 89 Cal. App. 4th 1260, 1266 (2001) (stating that legislative intent in adopting the term "notwithstanding any other provision" was "plain."); *People v. Hutchins* 90 Cal. App. 4th 1308, 1313 (2001) (the language operates "clearly and unambiguously"); *People v. Navarro*, 126 Cal. App. 3d 785, 793 (1981) (calling the phrase an "absolutely plain, clear mandate").

pared by the California Senate Judiciary Committee stated that existing law "does not provide for class actions" and that "absent the threat of a class action, there is no incentive to abort an illegal continuing course of conduct." S. JUDICIARY COMM., REPORT ON A.B. 969 at 2, 4 (Cal. 1999-2000).[9] It explained that the 1999 amendments "would provide that violators shall be subject to the remedies in [the FDCPA, including] . . . [a]ll actual damages and an amount not to exceed the lesser of up to $500,000 or 1 percent of the net worth penalty together with costs of suit and attorney's fees to *the prevailing plaintiff(s) for class actions.*" *Id.* at 2-3 (emphasis added). Similarly, the Bill Analysis prepared by the Assembly Committee on Banking and Finance notes that the bill "subjects debt collectors to the remedies of actual damages and up to $1,000 for an individual *and/or for violation affecting a class composed of numerous debtors.*" ASS. COMM. ON BANKING AND FINANCE, REPORT ON A.B. 969, at 1-2 (Cal. 1999-2000) (emphasis added).[10]

**[9]** Every court to have considered the issue has held that class actions may proceed under the amendment to the Rosenthal Act, notwithstanding the contradictory "individual action" language in § 1788.30. *See Palmer v. Stassinos*, 233 F.R.D. 546, 548 (N.D. Cal. 2006); *Abels v. JBC Legal Grp, P.C.*, 227 F.R.D. 541, 548 (N.D. Cal 2005); *Edstrom v. All Servs. & Processing*, No. C04-1514 BZ, 2005 WL 645920, at *4 (N.D. Cal. Feb. 22, 2005); *McDonald v. Bonded Collectors, LLC,* 233 F.R.D. 576, 577 (S.D. Cal. 2005). In addition, although not expressly considering the issue, this court and at least two California courts have entertained class actions

---

[9] *Available at* http://www.leginfo.ca.gov. Select the 1999-2000 legislative session in the drop-down list, and type "AB 969" to search. On the results page, select the "Papan" bill. Then, under the heading "Analyses," click the link to "Senate Committee."

[10] *Available at* http://www.leginfo.ca.gov. Select the 1999-2000 legislative session in the drop-down list, and type "AB 969" to search. On the results page, select the "Papan" bill. Then, under the heading "Analyses," click the link to "Assembly Committee."

brought under the Rosenthal Act. *See Irwin v. Mascott*, 370 F.3d 924, 927-28 (9th Cir. 2004); *Fireside Bank v. Super. Ct.*, 155 P.3d 268, 271 (Cal. 2007); *Asset Acceptance, LLC v. Hansen*, 2d Civ. No. B208548, 2009 WL 840047 (Cal. Ct. App. Apr. 1, 2009). In light of the clear statutory language, unequivocal legislative history, and the unanimous agreement of the courts, we hold that the Rosenthal Act permits class actions.

B.  *Cumulative Recovery under the FDCPA and the Rosenthal Act*

Arrow argues, in the alternative, that plaintiffs are precluded from recovering statutory damages under both the FDCPA and the Rosenthal Act. Its argument contravenes the plain language of both acts, and ignores the many courts that have permitted simultaneous recovery under both acts.[11]

**[10]** Federal law preempts state law in three circumstances:

> Congress can define explicitly the extent to which its enactments pre-empt state law . . . . Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to

---

[11]*See, e.g.*, *Costa v. Nat'l Action Fin. Serv*, 634 F. Supp. 2d 1069, 1077 (E.D. Cal. 2007); *Panahiasl v. Gurney*, No. 04-04479 JF, 2007 WL 738642 (N.D. Cal. Mar. 8, 2007); *Adams v. CIR Law Offices, LLP*, No. 07-cv1041-IEG(LSP), 2007 WL 2481550 (S.D. Cal. Aug. 29, 2007); *cf. Alkan v. Citimortgage*, 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004) (holding the 1999 amendment to the Rosenthal Act was not preempted by the FDCPA). *But see Mejia v. Marauder Corp.*, No. C06-00520 HRL, 2007 WL 806486, (N.D. Cal. Mar. 15, 2007) (doubting whether additional damages were available under the Rosenthal Act but denying the award because it was not warranted under the circumstances). Most of these cases involve individual plaintiffs, rather than classes, but that difference is not dispositive to the overall preemption analysis.

occupy exclusively. . . . Finally, state law is pre-
empted to the extent that it actually conflicts with
federal law.

*English v. Gen. Elec. Co.*, 496 U.S. 72, 79-80 (1990) (cita-
tions omitted). The FDCPA states explicitly:

This subchapter does not annul, alter, or affect, or
exempt any person subject to the provisions of this
subchapter from complying with the laws of any
State with respect to debt collection practices, except
to the extent that those laws are inconsistent with
any provision of this subchapter, and then only to the
extent of the inconsistency. For purposes of this sec-
tion, a State law is not inconsistent with this sub-
chapter if the protection such law affords any
consumer is greater than the protection provided by
this subchapter.

15 U.S.C. § 1692n. This language, coupled with the FDCPA's
express purpose to "promote consistent State action," 15
U.S.C. § 1692(e), establishes that Congress did not intend the
FDCPA to preempt consistent state consumer protection laws.[12]
*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("the pur-
pose of Congress is the ultimate touchstone in every pre-

---

[12]In addition, the legislative history strongly indicates that Congress
intended to subject debt collectors to liability under both federal and state
law. The Senate Report on the FDCPA, prepared by the Committee on
Banking, Housing, and Urban Affairs, states that the Committee "believes
that this law ought not to foreclose the States from enacting *or enforcing*
their own laws regarding debt collection." S. REP. 95-382 at 6 (1977). The
Committee recognized that "States with substantially similar laws may be
exempted from the act's requirements (*but not its remedies*) by applying
to the Federal Trade Commission." *Id.* (emphasis added); *see also* 15
U.S.C. § 1692o (permitting the FTC to exempt debt collectors from the
*obligations* of the FDCPA when operating in states which have substan-
tially similar laws). This implies that, even if a state law and the FDCPA
punish identical behavior in identical ways, debt collectors should be sub-
ject to liability under both.

emption case") (internal quotation marks, alteration, and citation omitted). Statutory damages under the FDCPA are intended to "deter violations by imposing a cost on the defendant even if his misconduct imposed no cost on the plaintiff." *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001). State laws permitting plaintiffs to recover additional statutory damages increase deterrence, thus affording greater protections to consumers and operating consistently with the FDCPA. *See* 15 U.S.C. § 1692n. Accordingly, we presume that the FDCPA permits plaintiffs to recover additional damages under state law.

[11] Similarly, the Rosenthal Act does not limit recovery simply because it is also available under federal law. The Rosenthal Act specifically provides that its remedies are intended to be "cumulative and . . . in addition to any other . . . remedies under any other provision of law."[13] CAL. CIV. CODE § 1788.32.[14] In an analogous case, the Eleventh Circuit

---

[13]The dissent argues that the California legislature "replaced" this provision when it incorporated the FDCPA's remedies provision. Dissent at 18132. Incorporation by reference adds statutory text to the existing statute. *See Don v. Pfister*, 155 P. 60, 61 (Cal. 1916); *In re Burke*, 212 P. 193, 193 (Cal. 1923). It does not necessarily repeal or "replace" already existing statutory text. The dissent's position rests on the supposition that by including the term "notwithstanding any other provision," the California legislature intended to repeal all of the Rosenthal Act's remedies provisions, whether or not those provisions are inconsistent with the text incorporated from the FDCPA. This position finds no support in California law. Rather, only contradictory law is superceded by the term, "notwithstanding any other provision." *See Bd. of Supervisors v. Super. Ct.*, 23 Cal. App. 4th 830, 841 (1994) (finding that a statute prefaced by "notwithstanding any other provision of law" "must prevail over *directly contradictory* provisions in other statutes"). The California legislature's incorporation of section 1692k did not supercede the Rosenthal Act's cumulative remedies provision because it is not contradictory to section 1692k. Although there is a potential inconsistency in cases where a cumulative award exceeds the FDCPA's damages limit, that issue is not presented here.

[14]Arrow cites several cases prohibiting "duplicative recovery" under the FDCPA and state consumer protection statutes. Those cases are easily distinguishable, as each of them involves a state statute that expressly prohibits cumulative recovery. *See, e.g.*, *Piper v. Portnoff Law Assoc.*, 216 F.R.D. 325, 328 (E.D. Pa. 2003) (citing 73 Pa. Cons. Stat. § 2270.5(c)).

held that a Florida consumer protection statute, which stated that its remedies were "cumulative," "contemplated dual enforcement—that an out of state debt collector could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA." *LeBlanc*, 601 F.3d at 1192 (internal quotation marks omitted).

Arrow argues that, notwithstanding the language of the FDCPA and the Rosenthal Act, permitting plaintiffs to recover under both statutes would (1) run afoul of the "general proposition that a plaintiff may not receive multiple awards for the same item of damage" and (2) contravene the FDCPA's implied limit on double recovery.

We readily dispense of the first argument, because the authority cited by Arrow for the proposition that "as a general rule, a plaintiff may not receive multiple awards for the same item of damage" is distinguishable. The general rule is that plaintiffs may not recover for the same loss in both contract and in tort. *See, e.g.*, *Ambassador Hotel Co. v. Wei-Chuan Invest.*, 189 F.3d 1017, 1032 (9th Cir. 1999). These common law principles are wholly inapplicable to the statutory damage provisions of the FDCPA and Rosenthal Act. Statutory damages under both provisions are not tied in any way to actual losses suffered by the plaintiff. *See* 15 U.S.C. 1692k(b); CAL. CIV. CODE § 1788.17. Moreover, we cannot reject the statutory text in order to imply common law limitations, particularly "where, as here, the statute's language is plain, [and] the sole function of the courts is to enforce it according to its terms." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-30 (4th Cir. 2007) (rejecting the district court's attempt to graft principles of common law witness immunity onto attorney communications under the FDCPA) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)).

**[12]** We also reject Arrow's argument that recovery under state and federal law contravenes the FDCPA's implied ban on cumulative recovery. Simply put, there is nothing in the

FDCPA from which to imply a *per se* prohibition on class recovery under both state and federal law. The only limit on class recovery under the FDCPA is that statutory damages for the class cannot exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. 15 U.S.C. § 1692k. This limit is intended to ensure that "punishment [is] meted out according to a business's ability to absorb the penalty." *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000).[15] Those concerns are not at issue in this case. Here, the total damages awarded were $225,500: significantly less than the statutory limit. In this case, permitting recovery under the Rosenthal Act and the FDCPA is not inconsistent with section 1692k of the FDCPA.[16]

## V.

In adopting the FDCPA, Congress emphasized that "[m]eans other than misrepresentation and other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(b). We hold that letters, which misleadingly implied that Arrow had the ability to report obsolete debts to credit bureaus, and impliedly threatened to make such reports, violated sections 1692e(5) and e(10) of the FDCPA. We recognize that the FDCPA does not pre-empt consistent

---

[15]The dissent characterizes the FDCPA's "protective cap on statutory damages" as a limit on "double" or "duplicative" statutory damages awards. *See e.g.*, Dissent at 18129, 18132. We agree that the FDCPA places a monetary limit on statutory damages. A monetary limit, however, is not the same thing as a prohibition on "duplicative awards" under complementary state and federal statutes. The FDCPA limits the total amount of damages a defendant may be required to pay; it does not bar recovery of damages under multiple statutes so long as the total award is below the monetary limit. The total damages award in this case is well below the FDCPA's monetary limit of $500,000 or one percent of the debt collector's net worth.

[16]We express no opinion on whether the FDCPA might preempt in part (as inconsistent with § 1692k(a)(2)(c)) class recovery under federal and state law when the total statutory damages exceed $500,000 or one percent of the debt collector's net worth.

state action, including cumulative recovery of statutory damages under state law. The Rosenthal Act's remedies are cumulative, and available even when the FDCPA affords relief. In light of these holdings, we AFFIRM the district court.

N.R. SMITH, Circuit Judge, dissenting in section IV of the majority opinion

I must dissent from the majority opinion, because plaintiffs cannot obtain a double statutory damages recovery under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* The plaintiffs in this case cannot receive duplicative statutory damages awards under California law, because the California legislature adopted identical provisions of the FDCPA when it amended California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), Cal. Civ. Code § 1788 *et seq.* Additionally, construing adopted FDCPA remedy provisions to provide duplicative awards must invite preemption, because such awards will undermine the statute's protective cap on statutory damages.

The California legislature replaced substantial portions of the Rosenthal Act with the FDCPA to harmonize California and federal debt collection practices law. *See* California Bill Analysis, Senate Judiciary Committee, A.B. 969, 1999-2000 Regular Session, July 15, 1999, p. 5, *available at* ftp://leginfo.public.ca.gov/pub/ 99-00/bill/asm/ab_0951-1000/ ab_969_cfa_ 19990708_133036_sen_comm.html (last visited Aug. 5, 2011). California Civil Code § 1788.17, which amended the Rosenthal Act, provides:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of,

Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

Cal. Civ. Code § 1788.17.

The prefatory language "[n]otwithstanding any other provision of this title" indicates the California legislature intended to replace any provision of the Rosenthal Act that touched upon subject matter adopted from the FDCPA—including, in particular, the remedy provisions in § 1692k. *See People v. Palacios*, 161 P.3d 519, 524 (Cal. 2007) ("[T]he broad and unambiguous scope of '[n]otwithstanding any other provision of law' overrides the application, if any, of [contradictory law].*"); *cf. United States v. Novak*, 476 F.3d 1041, 1052 (9th Cir. 2007) (en banc) ("We have recognized that including a 'notwithstanding any other law' provision is a method—akin to an express reference to the superseded statute—by which Congress can demonstrate that it intended to partially repeal an Act.") (internal quotation marks, alterations, and citation omitted). Section 1788.17 does not merely "supercede[ ] any provision . . . inconsistent with the referenced provisions of the FDCPA." Maj. Op. at 18122. Rather, § 1788.17 speaks in broad and unqualified terms. It contains "no specific language or exceptions to suggest the plain meaning of the phrase 'notwithstanding any other provision of [this title]' may be ignored. The clause means what it says." *Watkins v. Cnt. of Alameda*, 98 Cal. Rptr. 3d 847, 866 (Ct. App. 2009).

To be sure, although § 1788.17 explains at length which sections of the FDCPA will become operative under California law, it identifies no section of the Rosenthal Act that will remain in effect. If the California legislature intended anything other than a wholesale replacement of the operative stat-

utory text, it could have said so. Instead, it prefaced the amendment to the Rosenthal Act with the precedent-charged language "[n]otwithstanding any other provision of this title." Therefore, giving effect to § 1788.17's "plain" and "unqualified" meaning, the adopted remedy provisions of the FDCPA must operate independent of any formerly operative remedy provisions in the Rosenthal Act.

Given this interpretive backdrop, these plaintiffs cannot obtain a double statutory damages award under mirror provisions of the FDCPA. Certainly nothing in the text of the statute authorizes such a recovery. *See Mejia v. Marauder Corp.*, 2007 WL 806486, at *11-12 (N.D. Cal. Mar. 15, 2007) (declining to award duplicative statutory damages under the FDCPA and Rosenthal Act). The amended Rosenthal Act provides that debt collectors "shall be subject to the remedies in Section 1692k [of the FDCPA]." Cal. Civ. Code § 1788.17. Section 1692k, in turn, provides that individual plaintiffs may recover statutory damages up to $1,000 and class plaintiffs may recover statutory damages up to 1 per centum of a defendant's net worth. 15 U.S.C. § 1692k(a)(2). The Fifth and Seventh Circuits recognize that caps on statutory damages—like that in § 1692k of the FDCPA—are *protective* measures designed to strike a reasonable balance between punishing the deceptive debt collector and preventing catastrophic damage awards. As the Seventh Circuit observed:

> The key aspect of this net worth provision is not its punitive nature, . . . but a recognition that an award of statutory punitive damages may exceed a company's ability to pay and thereby force it into bankruptcy. . . . Thus, we agree with the Fifth Circuit that the primary purpose of the net worth provision is a *protective one*. It ensures that defendants are not forced to liquidate their companies in order to satisfy an award of punitive damages.

*Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000) (emphasis added) (citing *Boggs v. Alto Trailer Sales, Inc.*, 511

F.2d 114, 118 (5th Cir. 1975) (holding that an identical provision in Truth In Lending Act was designed to protect businesses from catastrophic damage awards)).

The majority's notion that the FDCPA can be read to allow duplicative statutory damages awards simply cannot be reconciled with the statute's carefully designed protective cap on non-compensatory damages. The Rosenthal Act's original directive that "remedies provided herein are intended to be cumulative and in addition to any other procedures, rights, or remedies" does not change this result. The California legislature *replaced* the Rosenthal Act's remedy provisions with those of a statute that cannot reasonably be read to provide for duplicative *statutory* (as distinct from compensatory) damages. The majority concedes that the FDCPA bars recovery of damages under multiple statutes above the monetary limit. Maj. Op. at 18128 n.15. Thus, the Rosenthal Act's cumulative remedies provision is contrary to and inconsistent with the FDCPA limit on statutory damages because double statutory damages may exceed the FDCPA limit. *Contra* Maj. Op. at 18126 n.13. Otherwise, we have to rewrite the Rosenthal Act's cumulative provision to make it conditional. *See* Cal. Civ. Code § 1788.32.

The FDCPA's implied limit on duplicative statutory damage awards must operate with equal force under California law as an incorporated provision of the Rosenthal Act, because when language is "obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Lambert v. Blodgett*, 393 F.3d 943, 966-67 (9th Cir. 2004) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)) (internal quotation marks omitted). This is precisely why the majority opinion concludes that plaintiffs may proceed as a class under the adopted provisions of the FDCPA, notwithstanding the Rosenthal Act's former prohibition on class recovery. *See* Maj. Op. section IV.A. It would be inconsistent to hold that adopted provisions of the

FDCPA control in one instance and not in another. If the class action provisions of the FDCPA trump the old Rosenthal Act, so too must the FDCPA's implied prohibition on duplicative statutory damages awards.

Further, such an award, if possible, must be preempted, because allowing double statutory damage awards under mirror provisions of the FDCPA will undermine Congress's careful design to shield errant debt collectors from crushing statutory damages awards.[1] As the majority indicates, "Congress can define explicitly the extent to which its enactments preempt state law. Preemption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) (internal citations omitted). Congress explained that the FDCPA "does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, *except to the extent that those laws are inconsistent with any provision of this subchapter*, and then only to the extent of the inconsistency." 15 U.S.C. § 1692n (emphasis added). Therefore, even if the amended Rosenthal Act could be read to permit duplicative statutory damages awards under identical provisions of the FDCPA, the very real prospect of undermining Congress's cap on statutory damages creates an "inconsistenc[y] with [a] provision of" the FDCPA meriting preemption. *Id.* Because I see no way to square the district court's duplicative damage awards with the FDCPA, I must respectfully dissent.

---

[1]Although the damages award in this case would not exceed the FDCPA cap, one can easily imagine another plaintiff class exceeding the cap where the numerosity of the class or severity of the claims exceed those in the present case.