Filed 5/4/16  P. v. Zepeda CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ELIAS ZEPEDA,<br><br>    Defendant and Appellant. | D067752<br><br><br>(Super. Ct. No. SCS270978) |

APPEAL from a judgment of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

Amanda L. Fates, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Elizabeth M. Carino and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

One afternoon, defendant and appellant Elias Zepeda was crossing a street with his two young sons when a driver nearly hit them.  Zepeda confronted, fought and stabbed

the driver, and was charged with numerous offenses. A jury rejected his self-defense claims and convicted him of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 2), with two enhancements (infliction of great bodily injury, §12022.7, subd. (a)) and personal use of a knife in the commission of the crime (§1192.7, subd. (c)(23)). He was also convicted of battery with serious bodily injury (§ 243, subd. (d); count 3), and its special allegations (use of a weapon and personal infliction of great bodily injury; §§ 12022, subd. (b)(1), 1192.7, subd. (c)(8),). Before trial, he pled guilty to count 4 (disobeying a family court order, § 273.6, subd. (a)). The jury acquitted Zepeda of attempted murder and its lesser included offense (attempted voluntary manslaughter; count 1). At sentencing, Zepeda received a total term of six years in prison.

On appeal, Zepeda first contends the trial court prejudicially abused its discretion by allowing the prosecutor to cross-examine him about the family court restraining order (DVRO) that prohibited him from having contact with his children, that had been the subject of his guilty plea to count 4. (Evid. Code, § 210 [relevant evidence has some "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) Zepeda alternatively argues he was denied his constitutional right to effective assistance of counsel when his attorney (a) asked questions on direct examination arguably opening the door to the admission of the DVRO evidence, and (b) failed to object to the prosecutor's irrelevant cross-examination about

---

[1]     All further statutory references are to the Penal Code unless noted.

the DVRO pursuant to Evidence Code section 352, on the grounds it was unduly prejudicial evidence. (*People v. Cudjo* (1993) 6 Ca1.4th 585, 623.)

Finding no prejudicial error or ineffective assistance of counsel in this record, we affirm the judgment of conviction.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Background: The Incident*

In Imperial Beach on March 14, 2014, Zepeda picked up his two young sons from school to visit for one of their birthdays. As they crossed a crowded street, a car sped toward them and stopped at the crosswalk, narrowly avoiding the family. Zepeda hit the hood of the car and yelled at the driver that he was supposed to stop at the crosswalk. The driver replied that he should "watch his fucking kids." Zepeda's group continued across the road, and Zepeda yelled at the driver, Shawn Edwards, that he should pull over at the side of the street. Once Edwards pulled over, Zepeda came up to the driver's side of the car and they continued to yell about kicking each other's asses. Zepeda punched or "smacked" Edwards in the face through the car window. Zepeda started to walk away, but Edwards got out of the car and rushed toward him, tackling him from behind and bringing him to the ground.

Zepeda had previously worked as a chef and he was looking for work that day. He had a portfolio or billfold in his pocket that contained a small culinary knife he had been given as a sample. As he and Edwards were face-to-face grabbing and punching each other, Edwards saw that Zepeda was holding a small knife in his hand. Edwards was afraid he was going to die and kept defending himself.

3

As they fought, a sheriff's deputy came by and started to break up the fight. When they separated, Edwards realized that he was bleeding from several stab wounds in his torso. Bystanders administered first aid to him until paramedics arrived. At the hospital, doctors found that he had four stab wounds that required surgery.

At the scene, Zepeda was taken into custody. His knees were scuffed and he had some redness on his head. He agreed to be interviewed by police, telling them he had challenged Edwards and told him to pull over. He said he had to take action against Edwards to protect himself and his sons. Edwards had punched him in the face and head, knocking him to the ground. Zepeda's billfold fell out, and he grabbed the knife from his billfold and stabbed Edwards a few times to get him off from on top of him. Then he threw the knife on the ground. He told the officer he was having difficulty that day with family issues, a separation from his wife and the death of his daughter.

Officers located Zepeda's billfold and knife on the ground at the curb next to Edwards's car. They interviewed several eyewitnesses. One witness said she saw Zepeda pull out a black billfold from his pants and then saw it flying across the pavement.

*B. Motions in Limine; Trial Testimony*

Before trial, Zepeda entered a guilty plea to the misdemeanor count 4 (disobeying the DVRO), with the purpose of keeping that information away from the jury. (§ 273.6, subd. (a).) He admitted he knew about the order but violated it anyway by taking his sons to Imperial Beach that day after school. The court explained that there was no longer such a charge pending and it would be eliminated from the jury's consideration, as irrelevant. The court continued to discuss the in limine matters, and advised counsel that

4

the rulings could change during trial, as follows: "Of course, either of you, you both know, you're experienced enough to know motions in limine last only so long when somebody gets on that stand. Depending on what comes out of the person's mouth could open the door to some of these things that have been excluded. So I will let you notify me if you think the door has been opened. Don't jump in that door. Say, your honor, can we talk about it first. And we'll talk about it at 8:30 or sidebar." The court then took Zepeda's admissions to three prior convictions.

In its rulings on the defense motions in limine, the court noted that each objection posed would be deemed as a continuing objection to the admission of the proffered evidence.

On direct examination, Zepeda testified at trial about picking up his sons after school on the day of his younger son's birthday. The boys did not live with him, but said he raises them and they have a great, close relationship. He explained how the incident began, when he saw the car coming toward them into the crosswalk and he pulled his kids toward him. He hit the car on the hood and told the driver to watch how he was driving, and made sure the kids got to a place of safety. When the driver cursed at them, he told him to watch his mouth, saying "If you want to talk to me like a man, pull over." Edwards rushed at him from behind and knocked him to his knees. Zepeda saw his billfold fall out, with his knife in it. Zepeda was afraid for his life and that of his sons, so he got out the knife and stabbed Edwards in self-defense to stop him from hitting him and get him off. When the sheriff's deputy arrived, they both stood up and Zepeda threw the knife to the ground. Later, he was interviewed by police.

5

At the outset of cross-examination, the prosecutor asked Zepeda about his statements that he had a great relationship with his young kids and was a great father who spent as much time as he could with them. The trial court held an unreported sidebar to discuss further testimony. The prosecutor then asked Zepeda whether he was even allowed to see his sons, and Zepeda admitted there was a restraining order preventing him from seeing them. He admitted that when he picked the kids up from school that day, he was in violation of the restraining order. The prosecutor responded, "Okay. Let's get that part straight." He went on to ask about the bus ride Zepeda took to the school and about Zepeda's explanation to the detective at the time of the incident that he was going through a tough time in his life, because his daughter had died and his wife was leaving him.

On redirect examination, defense counsel asked Zepeda more about his interview with the detective, such as when he told the detective he had used a knife to protect himself and to protect his children. Further testimony was taken from the detective, and both sides rested their cases.

When the court excused the jury to discuss legal matters, the court put on the record the sidebar conversation they had in court, about the prosecutor asking Zepeda about the DVRO against him. Although the court had previously found it was irrelevant that Zepeda was out with his sons in violation of that order, the court explained to defense counsel that the questions he had asked his client about the family relationships had opened the door to questions about the restraining order. The court asked defense counsel if he wanted to put anything on the record, and received the response that counsel

6

understood the ruling but respectfully disagreed that he had opened such a door. The court and counsel went on to discuss jury instructions. Among them were CALCRIM No. 226, on how the jury should evaluate the credibility or believability of the witnesses.

In closing argument, defense counsel emphasized that Zepeda had acted in self-defense, and had owned up to his anger and to his use of a knife to harm Edwards. He was truthful about violating the DVRO, but explained he had perceived ongoing danger and then taken action to defend himself and his children. The prosecutor's closing argument also mentioned the violation of the DVRO as part of the overall context of the events that day.

An audio and video recording of Zepeda's interview was played for the jury. It was stipulated that Edwards suffered four stab wounds which required surgery.

### C. Verdict and Sentencing

Following instructions and deliberations, the jury acquitted Zepeda of attempted murder and its lesser included offense (attempted voluntary manslaughter; count 1). He was convicted on the remaining counts and enhancements.

Zepeda's sentence was composed of a three-year middle term for the count of assault with a deadly weapon, plus an additional three years for the great bodily injury finding (§12022.7, subd. (a)). The court imposed and stayed four years for the conviction of battery with serious bodily injury and enhancements (§ 243, subd. (d); § 654). The court accorded Zepeda 354 days credit and remanded him to the sheriff for the term imposed on the count of violating the DVRO. He appeals.

7

DISCUSSION

On appeal, Zepeda contends the trial court abused its discretion by allowing the prosecutor to cross-examine him with irrelevant and highly prejudicial matter, the references to the DVRO. He contends that the standards of Evidence Code section 210 were violated, because the court had already determined at the plea bargaining stage that the issue was irrelevant to the current charges. He contends the court should therefore have adhered to its determination that the DVRO matter was collateral in nature. (*People v. Contreras* (2013) 58 Cal.4th 123, 152 (*Contreras*) [recognizing court's "wide latitude" to exclude collateral, irrelevant evidence].)

In the alternative, Zepeda contends this ruling interfered with his right to receive effective assistance of counsel. He argues defense counsel's questions arguably "opened the door" to the admission of the evidence, and that without any apparent tactical reason, his counsel had failed to make a specific objection under Evidence Code section 352.

I

*EVIDENTIARY RULINGS ON IMPEACHMENT QUESTIONS*

A. Legal Principles

We utilize an abuse of discretion standard to review the trial court's rulings determining the relevance and admissibility of evidence. (*People v. Green* (1980) 27 Ca1.3d 1, 24-25; *People v. Garcia* (2001) 89 Cal.App.4th 1321, 1334.) The court abuses such discretion in deciding whether to admit evidence only when it acts in an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."

(*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10 (*Rodriguez*).) The admissibility of evidence that is offered for impeachment is decided in the trial court's discretion. (*Ibid.*)

The jury was entitled to evaluate matters relevant to the truthfulness of the witnesses' testimony. (Evid. Code, § 780.) By testifying, Zepeda put his credibility in issue. (*Rodriguez, supra*, 20 Cal.4th 1, 9.) Even if a fact bears upon the credibility of a witness, it may be deemed to be a collateral matter to the charges. (*Ibid.*) The court in *Contreras* took note that it is not a proper subject of cross-examination to question a witness " 'upon collateral matters for the purpose of eliciting something to be contradicted.' " (*Contreras, supra,* 58 Cal.4th at p. 154.) The real question is whether the evidence alleged to be collateral in nature could give rise to any substantive inference about the defendant's guilt of the charged offenses. (*Id.* at p. 153.)

When a trial court decides whether to exclude evidence offered for impeachment on the ground that it is collateral or irrelevant, the court's considerations generally include whether the probative value of such evidence "is 'substantially outweighed' by its prejudicial, 'confusing,' or time-consuming nature." (*Contreras, supra*, 58 Cal.4th at p. 152; Evid. Code, § 352; *People v. Lewis* (2001) 26 Cal.4th 334, 374-375.)

### B. Arguments and Analysis

Zepeda argues that on this set of facts, his violation of the DVRO was entirely collateral to the assault and battery charges, as well as the attempted murder count. (*Contreras, supra,* 58 Cal.4th at p. 153 [a matter is "collateral" if it has no logical bearing on any material, disputed issue].) He claims that the prosecutor strategically decided not to object when he testified on direct examination about his relationship with his children,

9

even though the matter was essentially irrelevant. Zepeda accordingly claims that the trial court should have reined in the prosecutor's questioning when he thus attempted to get into irrelevant matters. (See *People v. Wells* (1949) 33 Ca1.2d 330, 340 [" 'Legitimate cross-examination does not extend to matters improperly admitted on direct examination. Failure to object to improper questions on direct examination may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony.' "]; *People v. Steele* (2002) 27 Ca1.4th 1230, 1248-1249.)

Zepeda argues he was unduly prejudiced when these irrelevant matters were placed before the jurors, because they might have engaged in speculation about why he was subject to a DVRO, or impermissibly surmised that he had a violent disposition in general. He further complains that no limiting instruction was given to assist the jury, but apparently none was requested. The jury deliberated for almost two full days and asked several questions, including a request for read back of Zepeda's testimony, which he argues shows it was a close case.

In *Contreras*, the court took the view that "a determination that impeachment or other evidence should be excluded as 'collateral' inherently involves the balancing contemplated by Evidence Code section 352." (*Contreras, supra*, 58 Cal.4th at p. 154.)[2] Zepeda's defense counsel did not object under Evidence Code section 352 when the prosecutor questioned Zepeda about his knowledge and violation of the DVRO.

---

[2]      Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice."

However, there was a general continuing objection noted for the record at the time of the ruling on the motions in limine, which apparently was understood by the court and counsel as including irrelevance objections.

Admittedly, both the issues of whether Zepeda had a great relationship with his sons and whether he had violated the DVRO were of marginal relevance to the charges sent to the jury. However, on viewing the record as a whole, we cannot say that the evidence about the DVRO had no logical bearing on the material and disputed issues raised by the charges, including the self-defense claim. Zepeda testified he helped raise his kids, while in actuality, he was prohibited from seeing them. When Zepeda presented his testimony about his self-defense beliefs, he allowed the jury to evaluate his credibility. In impeachment of his testimony about the ultimate asserted fact, that his self-defense was justified, matters directly going to his credibility were within the legitimate scope of inquiry. (See *Rodriguez, supra*, 20 Ca1.4th 1, 18-19 (dis. opn. of Kennard, J.).) This could include such family matters he raised.

Where an abuse of discretion is claimed, the discussion implies there were discretionary choices for the trial court. Otherwise competent, thoughtful trial judges could reach different conclusions on the admissibility of evidence in a given situation. The question is not whether a different result could have been reached, but rather whether the trial court's decision was arbitrary or irrational. In reviewing the ruling, we presume the trial court understood the problems presented and evaluated the appropriate factors. (Evid. Code, §210 [relevant evidence is that having a "tendency in reason to prove or

11

disprove any disputed fact that is of consequence to the determination of the action"];

Evid. Code, § 664 [presumption that official duty has been regularly performed].)

Here, the evidentiary issue was not expressly presented to the trial court in terms of relevance of the evidence compared to its probative value, since no objection was made under Evidence Code section 352.  Because of the nature of the problem presented, and the previous discussions with counsel, the court made an implied determination that these references to the DVRO during cross-examination did not create a danger of undue prejudice that substantially outweighed their probative value.  (*Contreras, supra*, 58 Cal.4th 123, 149-153.)  In this context of asserted self-defense, the trial court had discussed the problems of "opening a door" to potentially irrelevant matters with counsel, and it conscientiously discussed the matter at sidebar when it again arose.  As presented, the DVRO information was not unduly inflammatory or prejudicial.  It was explained further in closing arguments, according to the parties' different points of view.  The jury was instructed on how to evaluate the witnesses' testimony.

Although a different evidentiary ruling would certainly have been possible on this record, Zepeda has not shown an abuse of the trial court's "broad discretion" in allowing the cross-examination and impeachment to proceed in this manner.  (*People v. Lewis*, *supra*, 26 Cal.4th 334, 374.)

II

*ARGUMENTS CONCERNING INEFFECTIVE ASSISTANCE OF COUNSEL*

Zepeda next contends his trial counsel was ineffective for bringing up matters that allowed the prosecutor to ask broad impeachment questions, and for compounding the

12

problem by failing to make adequate objections.  Even assuming adequate relevance objections were raised, he contends a more specific objection under Evidence Code section 352 would have been required to afford him effective assistance of counsel. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1130.)  He further argues the record does not demonstrate that counsel had any strategic or tactical reasons for allowing that area of inquiry.

## A.  Applicable Standards

To show that trial counsel's performance was constitutionally defective, an appellant must prove:  (1) counsel's performance fell below the standard of reasonableness, and (2) the "deficient performance prejudiced the defense."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)  It is the defendant's burden to prove the inadequacy of trial counsel, and defendant's burden is difficult to satisfy on direct appeal. Competency is presumed unless the record affirmatively excludes a rational basis for trial counsel's choice.  (*People v. Ray* (1996) 13 Cal.4th 313, 349 (*Ray*); *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.)  We reverse on the ground of inadequate assistance on appeal only if the record affirmatively discloses no rational tactical purpose for counsel's act or omission.  (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437 (*Lucas*); see *Ray*, *supra*, at p. 349.)  An appellate court generally cannot fairly evaluate counsel's performance at trial based on a silent record.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

A decision on whether to object to evidence is often a tactical one.  (*People v. Catlin* (2001) 26 Cal.4th 81, 165; *People v. Hillhouse* (2002) 27 Cal.4th 469, 502; *People*

13

*v. Frierson* (1991) 53 Cal.3d 730, 749 ["[I]n the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. The choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal."]; *People v. Ghent* (1987) 43 Cal.3d 739, 772 ["[A] mere failure to object to evidence or argument seldom establishes counsel's incompetence."].)

## B. Analysis

Zepeda first argues that his trial attorney was ineffective because a specific objection to the impeachment questioning about the DVRO, as more prejudicial than probative, would clearly have been meritorious. (Evid. Code, § 352.) He points out that a relevancy objection alone, such as his continuing objection appeared to be, does not preserve a claim of error under Evidence Code section 352. (See *People v. Mills* (2010) 48 Cal.4th 158, 194.)

The trial court called a sidebar during the impeachment questioning, and later gave defense counsel an opportunity to make a record on the issue. Counsel merely responded that he understood the ruling but disagreed that any door had been opened on the DVRO matter. On appeal, Zepeda argues this was an inexplicable failure to make a correct record on an essential issue, particularly since the guilty plea to the DVRO violation count was made to prevent the jury from hearing about it.

The record does not support Zepeda's contention that there was deficient performance by counsel or resulting prejudice. First, it is not entirely clear that an objection under Evidence Code section 352 to the impeachment questioning, if made,

14

would have been sustained, in light of the apparent effort by the defense to present Zepeda as a devoted father who was trying to protect his sons from being harmed by the driver. Defense counsel chose to explain why the family members were together on that day, when the altercation arose. The DVRO matter did not lead to an undue consumption of time, and it was somewhat relevant to give context to the events.

Even if we were to assume that a proper objection did exist, the record does not provide us with any information from which we could determine whether Zepeda has met his burden to show ineffective assistance of counsel on this issue. All we know from this record is that Zepeda's counsel did not object. The record appears to support the People's argument that Zepeda's trial counsel's decision not to object to the impeachment question was a reasonable one. (*Ray*, *supra*, 13 Cal.4th at p. 349.) He may not have objected because he did not want to draw undue attention to the DVRO or the reasons why it was issued. He reasonably could have believed it was tactically sound to avoid further highlighting the matter by objecting. We cannot simply assume ineffective representation without a record that shows trial counsel's reasoning.

Since we generally defer to the tactical decisions of trial counsel, and since there is no record disclosing a lack of a rational purpose for Zepeda's trial counsel's failure to object, we cannot conclude that trial counsel was ineffective. (See *Lucas*, *supra*, 12 Cal.4th at pp. 436-437.) In any event, since we do not find the trial court abused its discretion in allowing the impeachment questioning, Zepeda cannot show that his trial counsel's failure to assert objections constituted ineffective assistance of counsel. (See *People v. Carter* (2005) 36 Cal.4th 1215, 1257, fn. 29.)

15

DISPOSITION

The judgment is affirmed.


                                                        _____
                                                                    HUFFMAN, J.

WE CONCUR:


_____
        McCONNELL, P. J.


_____
        AARON, J.